GOODSPEED v. NICHOLS.

1. VENDOR AND PURCHASER—VENDOR LIABLE FOR REPAIRS WHERE REPRESENTED TO BE IN USABLE CONDITION.

Where, in a written contract for the purchase of a house, it was represented by the vendor that "the plumbing, heating, and lighting system * * * is in proper usable condition," and, after the deed was executed and delivered, the purchaser made necessary repairs thereto, the vendor was liable therefor, provided the purchaser acted with reasonable promptness after discovery of such defects.[1]

2. DEEDS — UNPERFORMED PROVISIONS OF PRELIMINARY CONTRACT NOT MERGED IN DEED.

Where a deed constitutes only a part performance of the preliminary contract under which the land was sold, other distinct and unperformed provisions of such contract are not merged in the deed, but remain in force until full performance.[2]

3. SAME—PURPOSE OF DEED IS TO CONVEY TITLE.

The purpose of a deed is to convey title to land, and not to describe the terms of a preceding contract under which the land was sold.[3]

4. MORTGAGES—FORECLOSURE—EQUITY WILL LOOK THROUGH DEED TO CONTRACT.

In a suit to foreclose a mortgage, a court of equity will look through a deed to the contract in performance of which the deed was given, and, if such contract contains valid, relevant provisions not covered by the deed nor inconsistent with it, will enforce such unperformed provisions of the contract.[4]

Appeal from Kent; Brown (William B.), J. Submitted October 24, 1924. (Docket No. 146.) Decided June 18, 1925.

Bill by Theron H. Goodspeed against Mortimer C. Nichols and others to foreclose a mortgage. Defend-

[1]Vendor and Purchaser, 39 Cyc. p. 1638 (Anno); [2]Deeds, 18 C. J. § 231; [3]Id., 18 C. J. § 1; [4]Id., 18 C. J. § 231; Equity, 21 C. J. § 200.

ants filed a cross-bill for an accounting.     From a decree for defendants, plaintiff appeals.     Affirmed.

*Corwin & Norcross,* for plaintiff.

*Colin P. Campbell,* for defendants.

STEERE, J.     This bill was filed to foreclose a $15,000 mortgage given to secure part of the purchase price for a property located at the northwest corner of Cherry street and College avenue in the city of Grand Rapids, Michigan, known as the "Fox homestead," and sometimes called the "castle" owing to the size and architecture of a pretentious stone residence located upon it.     Although indicated interests led to making all the named parties defendants, Mortimer C. Nichols is conceded to be the real defendant in interest and may be referred to as the defendant in discussion of the case.     Plaintiff Goodspeed had become owner of the Fox homestead and being desirous of selling it so informed Mr. Howard Brown, a real estate dealer and broker with offices in the Michigan Trust building in Grand Rapids, requested his services in disposing of it and told him the price he asked.     Some time later Brown met and called the attention of defendant Mortimer C. Nichols, of Hastings, Michigan, to this property and interested him in it.     After examining the property, which had been vacant for some time, defendant submitted an offer to Brown of $22,500 for the place.     Brown submitted this to plaintiff who refused to accept the offer or to take less than his price of $25,000.     After considering and discussing the matter with Brown for some time, defendant finally went to Brown's office and made a further offer agreeing to pay plaintiff's price on certain terms.     Brown reduced the offer to writing on a form of an "authorized agreement of the Grand Rapids real estate board" which, omitting formal parts and description of the property, reads as follows:

"The terms of purchase to be as follows: $10,000 on delivery of warranty deed, and balance to be paid by mortgage back for $15,000, interest at six (6%) per cent. per annum payable semi-annually, terms to be mutually agreed upon.

"It is understood that the plumbing, heating and lighting system in above described premises is in proper usable condition.

"An abstract showing good title written up to date, also abstract of taxes to be furnished me clear of expense.

"I hereby agree to give to Howard Brown one day to get the owner's signature to the written acceptance of this proposition appearing below, which, when signed, will constitute a binding agreement between purchaser and seller, and herewith deposit $1,000 as earnest money to apply on the purchase price.   If proposition is not accepted or the title is not good this amount to be refunded, otherwise to be retained.

"Sale to be closed on or before August 15, 1922."

After defendant had signed it and made the deposit Brown promptly submitted the proposed agreement to plaintiff for his acceptance and signature.   Brown testified that plaintiff first objected to the provision relative to the plumbing, heating and lighting system being "in proper usable condition," and he discussed the matter with him at length, pointing out that the building had been vacant so long nobody knew the precise condition of those three equipments, defendant had insisted on protection from the necessity of any unanticipated elaborate outlay upon them, and made that clause a condition of his paying the full price of $25,000 which plaintiff demanded for the property; that after a full discussion plaintiff "finally said, 'All right, I will accept that proposition,' which he did" and signed the agreement.   Apparently following the authorized form used this addenda or postscript appears on the instrument over plaintiff's signature:

"The above proposition is hereby accepted.   I also

agree to pay Howard Brown a commission of $950 for negotiating this sale, but if not closed on account of purchaser's default the commission shall not exceed the amount of the deposit."

This writing so executed constituted a binding contract of bargain and sale between the parties for the real estate therein described, which both parties thereafter recognized and acted upon. Nichols then took possession of the unoccupied property he had contracted for, with a payment of $1,000 down, and took steps to make repairs upon the long-vacant "castle" and put it in habitable condition. On overhauling the old plumbing, heating and lighting equipment in it he found that it was necessary to make various repairs upon the same to put it in proper usable condition, which he did and kept separate accounts of the cost of labor and material applied to that purpose.

On August 12, 1922, three days before the time limited, the papers were in Brown's hands to close the sale and Nichols paid Brown $9,000 more, signed a note to Goodspeed for $15,000 secured by a mortgage to him on the property and received from Brown in exchange therefor a deed of the property executed by Goodspeed, both of which instruments were duly recorded. He at the same time gave Brown the bills he had for necessary repairs to put the plumbing, heating and lighting system in proper suitable condition. He alleges in his sworn answer and crossbill that he then demurred to paying the full balance of the purchase price and giving the mortgage in question until the repairs were completed, costs therefor allowed by plaintiff and deducted from the purchase price, but that—

"Howard Brown, the agent of the plaintiff, then said to the defendants that it would be best to pay the balance of the purchase price, take the deed and give the mortgage for the foreclosure of which this suit

is brought and when the repairs were completed that the plaintiff would then upon the presentation of the bill therefor pay the defendants what they expended in the repair of the plumbing, heating and lighting system," etc.

The transaction took place in Brown's office. Goodspeed was not present. His answer to this allegation is a denial that any such demurrer was ever made to or any such assurance given by him or his authorized agent. Nichols did not know and never saw Goodspeed until long after these transactions were completed, although, as he later learned, Goodspeed lived but a comparatively short distance from the Fox homestead, in the same block. On August 14, 1922, Brown reported in writing to Goodspeed that he had closed the sale of the property to Nichols according to the contract, saying in part:

"I am inclosing herewith bills for actual necessities to boiler, water and roof repairing which Mr. Nichols has kept down to the very minimum, and as per agreement is forwarding to you for payment."

On August 23, 1922, Goodspeed in acknowledging the report said in part:

"As I cannot see where these bills come under any agreement of mine, I am returning same to you. There might be a very few items in the Nyburg bill that could be chargeable to the heating and plumbing system, but in any event it could not be for any more than just joining together the drainage connections."

Brown, who testified that he visited the "castle" on various occasions while repairs were being made, wrote a strong protest to Goodspeed's refusal to recognize the bills, calling attention to the provisions of the contract as to the plumbing, heating and lighting system, stated what he personally saw of the condition of the equipment, including "14 leaks in heating pipes under the cement," and urged him not to

repudiate what had been understandingly agreed to both orally and in writing, saying in conclusion:

"I earnestly hope you will reconsider this matter and advise my office to forward you the bills above mentioned for payment as I earnestly wish to avoid any difficulty between you and Mr. Nichols."

Goodspeed stood steadfast in his refusal to admit liability for any of the bills for repairs, and Nichols refrained from paying two installments of interest on the note and mortgage when they fell due. Plaintiff then elected to declare the whole amount due under the provisions of the mortgage and filed this bill, on October 24, 1923, to foreclose the same. Defendant answered setting up the provision in the contract relative to plumbing, heating and lighting, the necessary repairs made to put them in proper usable condition, and plaintiff's refusal to recognize any responsibility therefor, admitted that interest past due on the mortgage had not been paid, and alleged by way of cross-bill that he was ready, able and willing to pay the full amount due on said mortgage with interest as soon as plaintiff would recognize and pay or give credit for the amount necessarily expended by him for repairs, and which plaintiff had heretofore failed and refused to do, concluding with a prayer for an accounting and general relief. Plaintiff answered defendant's cross-bill issuably, the most material part of his answer being a denial that Brown was his agent "or had any authority to act for him except as a broker for the purpose of bringing the parties together," and that defendant's claim is foreclosed by voluntary payment of the agreed portion of the purchase price, giving a mortgage for the balance and accepting a deed of the property. The lower court heard the proofs of the parties on their bill and cross-bill, found the total sum due on defendant's note and mortgage was $16,740.27, that defendant had neces-

sarily expended on the plumbing, heating and lighting system $595.04 to put the same in proper usable condition, the interest on which at 5 per cent. from the time bills were rendered amounted to $52.24, making a total of $647.28 which he was entitled to credit for under the agreement, and granted plaintiff a decree of foreclosure for the balance of $16,092.99, without costs to either party, from which plaintiff appealed.

Most of defendant's proofs were admitted against plaintiff's objection, followed at close of the testimony by a motion to strike the same out, on the theory that the preliminary agreement or contract of purchase gave defendant no right to enter into possession of the premises to make repairs and he was a trespasser in so doing; that Brown was not the agent of plaintiff and had no authority to act for him as his agent in any respect, except as a broker in bringing the parties together; that the agreement of purchase and sale was merged in the deed, which then became conclusive evidence of defendant's rights and no action at law or suit in equity could thereafter be maintained upon the extinguished agreement.

The claim that Nichols was a trespasser and is precluded from any rights the agreement might give him because he began the necessary repairs in question before receiving his deed impresses us as a far-fetched technicality under the undisputed circumstances shown here.   There is no claim of fraud, misrepresentation or concealment on the part of either party, in making this agreement.   Nichols did not know and never met Goodspeed until after the entire transaction was completed and he had received a deed of the property.   Brown had approached him on the subject as Goodspeed's agent authorized to sell him the property at a certain price.   Nichols dealt directly with him as such all the way through, received the refusal of his first offer and Goodspeed's signed ac-

ceptance of his second offer from him, paid him $10,000 down on the purchase price, delivered to him a note and mortgage for the balance and received from him his deed, all of which Goodspeed recognized and ratified. When he started to make the repairs in question he had paid $1,000 on the property and bound himself by a written agreement, which Goodspeed had also accepted and signed, to buy it at Goodspeed's price and was openly on the premises repairing the building when the sale was closed, with the actual knowledge and consent of Brown, the only man he had dealt with, and who visited the place on various occasions while the work was being done. He had mechanics at work there, going in and out. There is no claim of concealment or secret entry. It is not a violent assumption that Goodspeed who lived near there in the same block, though then unknown to Nichols, had knowledge of what was going on and acquiesced in it. But whether he did or not, it is immaterial under the undisputed facts in the case just when Nichols discovered the system in question was not in proper and usable condition after he had contracted to buy the property, provided he acted with reasonable promptness in notifying plaintiff after making the discovery. He was bound by his agreement to purchase the property whatever the condition of the old plumbing, heating and lighting system might be. Goodspeed inadvertently recognized his obligations under the agreement to a degree when he wrote Brown repudiating the bills sent him, saying: "There might be a very few items in the Nyburg bill that could be chargeable to the heating and plumbing system,"— but passing that, the agreement which he signed plainly makes him liable for the reasonable and necessary cost of putting the conveniences mentioned in proper usable condition.

As to plaintiff's claim of merger, it may be con-

ceded that a deed made in full execution of a contract for the sale of land is presumed to merge the provisions of a preceding contract pursuant to which it is made, including all prior negotiations and agreements leading up to execution of the deed, with the long recognized exception that—

"Where, however, the deed constitutes only a part performance of the preceding contract, other distinct and unperformed provisions of the contract are not merged in it.    And where a contract of sale provides for the performance of acts other than the conveyance, it remains in force as to such other acts until full performance."    18 C. J. p. 271.

The purpose of a deed is to convey title to land, not to describe the terms of a preceding contract under which the land was sold.    Its recognized office as a legal instrument is to pass the title to the grantee. To that extent Goodspeed fully fulfilled his obligations under the agreement to convey a good title, and thereby merged in the deed he gave all matters in the agreement relating to the title, but it did not merge the distinct and unperformed provision relating to the repairs under consideration here.    The provision of the contract is neither contradictory of nor inconsistent with the deed.

Plaintiff began his foreclosure proceeding by suit in chancery.    Under the situation presented here, a court of equity will look through the deed to the contract in performance of which it is given and, if it contains other valid, relevant provisions not covered by the deed nor inconsistent with it, may enforce the same.    This is such a case.    We find nothing in the cases cited for plaintiff to the contrary.

The decree will stand affirmed, with costs of this court to defendant.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.