GREENSPAN v REHBERG

1. EQUITY—APPEAL AND ERROR—DE NOVO REVIEW.

Review in an equity action is *de novo;* however, great weight is given to the findings of the trial court and the Court of Appeals will not substitute its judgment unless convinced that a different conclusion would have been reached had it been sitting as the trial court.

2. EQUITY—APPEAL AND ERROR—FINDINGS OF FACT.

Findings of fact in an equity case will not be set aside unless clearly erroneous (GCR 1963, 517.1).

3. COVENANTS—VENDOR AND PURCHASER—DEEDS—CONTRACTS—LAND CONTRACTS—MERGER.

Distinct and unperformed covenants of a contract are not merged into a deed where the covenants are collateral to the contract for the deed and an obligation independent of conveyance of title, possession, quantity, and emblements, and where the deed constitutes only a part performance of the contract.

4. COVENANTS—COVENANTS RUNNING WITH LAND—ELEMENTS.

The essentials of a covenant running with the land, whether negative or affirmative in nature, are that the grantor and grantee intended that the covenant run with the land, the covenant affects or concerns the land with which it runs, and there is privity of estate between the party claiming the benefit and the party who rests under the burden.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error § 822.

[3] 20 Am Jur 2d, Covenants, Conditions and Restrictions §§ 3, 271.

[4] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 29 *et seq.*

[5, 6, 11] 25 Am Jur 2d, Easements and Licenses § 22.

[7] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 34.

[8] 20 Am Jur 2d, Covanants, Conditions and Restrictions § 304 *et seq.*

[9] 20 Am Jur 2d, Covenants, Conditions and Restrictions §§ 42, 94.

[10] 27 Am Jur 2d, Equity § 102 *et seq.*

[12] 17 Am Jur 2d, Contracts § 253.

[13, 14] 23 Am Jur 2d, Depositions and Discovery § 149.

5. COVENANTS—COVENANTS RUNNING WITH LAND—VENDOR AND PUR-
   CHASER—LAND CONTRACTS—EASEMENTS—INTENT.

   A finding that the parties to a land contract intended that a
   covenant run with the land was proper where the covenant
   provided for a continuing obligation to maintain a right-of-way
   and the parties agreed to share equally the cost of mainte-
   nance.

6. COVENANTS—COVENANTS RUNNING WITH LAND—EASEMENTS—ELE-
   MENTS.

   A covenant touches and concerns the use, value, or enjoyment of
   an easement where the covenant deals with the improvement
   and maintenance of the easement, benefits any subsequent
   owner of either the easement, the dominant estate, or the
   servient estate, and is not for personal benefit.

7. COVENANTS—COVENANTS RUNNING WITH LAND—VENDOR AND PUR-
   CHASER—PRIVITY OF ESTATE—CHAIN OF TITLE.

   The privity of estate requirement for a covenant to run with the
   land has been fulfilled where the chain of title with respect to
   both the easement and the dominant estate is unbroken from
   the defendant grantors to the original grantees, and then to the
   plaintiffs.

8. COVENANTS—VENDOR AND PURCHASER—LAND CONTRACTS—NOTICE
   OF COVENANT.

   A finding that the plaintiffs took title to land with knowledge of a
   covenant embodied in a land contract between the defendants
   and the original grantees is not clearly erroneous where the
   title passed to the grantees and then to the plaintiffs in
   essentially a single transaction, and plaintiffs performed part of
   the covenant obligation and thereby acknowledged the cove-
   nant was binding upon them.

9. COVENANTS—MAINTENANCE OF ROADWAY—BREACH OF COVENANTS.

   Plaintiffs had no right to remove culverts which acted as a dam
   and caused flooding on their land where the removal caused
   the severance of a roadway which the plaintiffs had covenanted
   to maintain and a reasonable means existed to both fulfill the
   covenant and prevent future flooding.

10. EQUITY—RELIEF—FLEXIBILITY.

    Equity may shape her relief according to the situation as it
    presents itself when the time for the decree arrives.

11. Equity—Equity Decree—Covenants—Easements—Construction of a Bridge—Intent of Parties.

A trial court did not err in ordering the construction of a bridge pursuant to an affirmative covenant to maintain an easement where this was the only feasible method of insuring that the originally expressed intent of the parties was fulfilled.

12. Contracts—Attorney and Client—Construction of Agreements—Strict Construction.

An agreement drawn up by the defendants' attorneys must be strictly construed against the defendants.

13. Discovery—Refusal to Admit—Reasonableness—Court Rules.

The mere fact that a matter was proved at trial does not, of itself, establish that a denial in response to a request for an admission of the matter was unreasonable (GCR 1963, 313.3).

14. Costs—Discovery—Refusal to Admit—Court Rules.

Costs were improperly imposed on plaintiffs for their failure to admit, in response to a request for admissions, where the requests were not for admissions of fact but for admissions of elements of the defendants' claim, and where the defendants never applied to the court for an order requiring the payment of such costs, and plaintiffs were denied the opportunity to demonstrate their refusal to admit was reasonable and proper (GCR 1963, 312.1, 313.3).

Appeal from Washtenaw, Paul R. Mahinske, J. Submitted Division 2 March 7, 1974, at Lansing. (Docket No. 16358.) Decided November 6, 1974. Leave to appeal denied, 393 Mich 792.

Complaint by Marshall J. Greenspan, Benita Greenspan, Fred E. Greenspan, and Elayne Greenspan against Carl E. Rehberg and Elsa D. Rehberg for an injunction restraining interference with a right-of-way. Counterclaim by defendants for an order requiring plaintiffs to build a bridge to maintain the right-of-way. Judgment for defendants. Plaintiffs appeal by leave granted. Reversed and remanded.

*Keene & Keene,* for plaintiffs.

*Hooper, Hathaway, Fichera, Price & Davis,* for defendants.

Before: McGREGOR, P. J., and R. B. BURNS and R. L. SMITH,* JJ.

McGREGOR, P. J. Plaintiffs are before this Court on leave granted, to appeal a decision of the circuit court which ordered plaintiffs, *inter alia,* to construct a bridge over Traver Creek and taxed expenses against them for defendants' court and attorney fees. GCR 1963, 313.3.

Prior to 1963, the defendants owned two parcels of land within the city limits of Ann Arbor. The northerly boundary of both parcels is Plymouth Road; the southerly boundary is Jones Drive. Both parcels are traversed by Traver Creek, a natural watercourse, which flows through the property from the northeast to the southwest. The land is a valley, with the stream at the center. The grade from the stream to Plymouth Road is fairly shallow, while the grade from the stream to Jones Drive is steep.

The defendants operate a water bottling plant on the westerly parcel of the property. In order to provide access to the plant to themselves and their customers, defendants built a 12-foot wide gravel surface road which ran in a north-south direction between Jones Road on the south and Plymouth Road on the north. The waters of Traver Creek were carried under this roadway through two 30-inch concrete culverts.

In 1963, defendants listed the property for sale with a real estate broker, who produced Congress Management Company, consisting of Mr. Rogers and Mr. Ross, as a prospective purchaser. During

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

the negotiations, the purchasers wanted to buy the roadway but defendants refused and offered a joint easement instead. On December 11, 1963, the preliminary discussions culminated in a preliminary purchase agreement between defendants and Ross and Rogers as purchasers. The following language was included in the agreement:

"It is agreed that the road on the south side of the above property running from Plymouth Road to Jones Drive is to be: (?) a joint drive between the purchaser and the seller, twenty-four feet wide, initial paved surface and *culvert tile to be paid by the purchaser and all subsequent maintenance to be paid equally by the purchaser and seller as joint users;* addition of 12 feet to be on north side of present road." (Emphasis added.)

The purchase agreement of December 11, 1963 was to be consummated by February 14, 1964, by the execution of a short-term land contract running to January 1, 1965, on which date the entire purchase price was to be paid. A few days after the execution of the purchase agreement between defendants and Congress Management Company, the plaintiffs began negotiations with Congress Management for the purchase of the land. The plaintiffs had no meetings with defendants at this time and all discussions concerning the land were held with Mr. Rogers, of Congress Management, who represented himself as the land contract purchaser, as evidenced by the purchase agreement of December 11. On January 22, 1964, a preliminary agreement was entered into between plaintiffs and Rogers and Ross, to purchase the same land that was then under negotiation of sale between defendants and Rogers and Ross.

On February 14, 1964, a land contract and deed were executed between the defendants and Rogers and Ross. The granting of the easement was for-

mally accomplished as a part of the legal description, as follows:

"Granting a right-of-way, 24 feet wide, for use in common with others over the following described land:"

At the end of the legal description in this land contract, the following appears:

"Purchaser agrees to improve said right of way as provided in paragraph 'L' and parties hereto agree to maintain said right of way as provided in paragraph 'L' hereof."

The conditions relating to the use and improvement of the right-of-way were included in paragraph "L" of the land contract, which provided:

"Purchaser agrees to perform grading and initial paving of the surface of said right-of-way and in addition thereto *to extend the present culvert completely across said right-of-way at purchaser's expense.* Subsequent maintenance of said right-of-way to be paid equally by seller and purchaser thereof." (Emphasis added.)

The warranty deed prepared the same day by defendants' attorneys contained no reference to the paragraph in the land contract concerning paving and culverts, and no covenant as to the improvement or maintenance of the right-of-way or culvert was contained in the deed.

On March 25, 1964, the land contract and deed were executed between plaintiffs and Rogers and Ross. On the same day, Rogers and Ross assigned their interests in the land contract entered into with the defendants to the plaintiffs. The agreements and deeds between Rogers and the plaintiffs contained no covenant or promise with reference to the easement, but merely stated the existence of

a 24-foot-wide right-of-way for use in common with others over the described land.

On March 27, 1964, an escrow agreement was signed pursuant to which the deeds from defendants to Ross and Rogers, and from Ross and Rogers to plaintiffs, were placed in escrow, along with the Ross and Rogers-plaintiffs contract, and an assignment of the defendants-Ross and Rogers contract.

At some time prior to 1963, the land involved had been zoned for multiple dwelling apartments and was acquired by the plaintiffs for that purpose. After the plaintiffs acquired the property they retained architects and engineers to prepare land plans and perform the engineering preparatory to the construction of the apartments. During the construction of the apartments, plaintiffs paved and widened the roadway from 12 to 24 feet; plaintiffs also extended the culverts completely across the right-of-way. Further, pursuant to the recommendations of the engineers who designed the apartment project, one of the 30-inch culverts was replaced with a 78-inch culvert.

Between 1964 and 1968, plaintiffs assumed the entire maintenance of the road and made all necessary repairs; no contributions to maintenance or repairs was ever made by the defendants.

During the period from 1964 to 1968, several apartment complexes were built, the city of Ann Arbor built a golf course on drained swamp land which had normally retained storm waters, the University of Michigan extended its north campus, and a shopping center was completed on adjacent lands. All of this construction was upstream from the plaintiffs'-defendants properties and drastically increased the amount of water normally emptied into and carried by Traver Creek.

In the summer of 1968, the apartment complex owned by the plaintiffs was subjected to a devastating flash flood as the result of increased runoff water from the Ann Arbor-drained swampland, the U of M north campus, and the upstream shopping center. The two culverts which had been installed by plaintiffs were partially blocked with debris from the upstream lands and the sanitary sewer was inundated and flooded onto plaintiffs' land. Water, debris and sewage rose to a level of several feet in the lower apartments in plaintiffs' apartment project. Repair costs amounted to $80,-000. Late in 1968, the property was again threatened by floodwaters, and again in 1969, when Traver Creek flooded to within a few feet of the apartment buildings.

The Ann Arbor building department contacted plaintiffs and informed them that the culverts under the roadway were inadequate for the amount of water then being carried by Traver Creek. The city indicated that, if plaintiffs did not remove the culverts, it would take action to do so. As a result of this warning, a meeting was held at which the city officials, plaintiffs and defendants were present. During this meeting several alternatives were considered, including the dedication of the entire right-of-way to the city, the request of the city to install culverts or a bridge, creation of a special assessment district by the county, and the contribution by both parties to the cost of a bridge over the stream. The testimony is in conflict concerning what agreement, if any, was reached as a result of this meeting.

In the spring of 1969, the culvert was removed by plaintiffs, thus severing the roadway and preventing both plaintiffs and defendants from reaching Plymouth Road from the Jones Drive side of

the stream. Defendants demanded that a bridge be built; plaintiffs requested contributions for the cost of such a bridge from defendants; this request was refused. No agreement was ever reached between plaintiffs and defendants as to the building of a bridge or the sharing of its cost.

After the culvert was removed, Jones Drive was the only entrance to defendants' property. Defendant testified that because of the sharp incline from Jones Drive to his plant, trucks entering and leaving could not negotiate the road from this entrance. Defendants' testimony consisted of the fact that bottles on various trucks were broken and that there was damage to some trucks making deliveries to the defendants' plant. The loss of these items totalled $1,532.38.

Following the severance of the defendants' access to Plymouth Road the defendants thereupon blocked the entrance from the right-of-way to the plaintiffs' apartment complex, thus denying their tenants and service vehicles access to the property via Jones Drive. The road remained open for defendants' trucks and vehicle services.

Plaintiffs filed a complaint in circuit court, requesting a permanent injunction restraining interference with the right-of-way by defendants; defendants counter-claimed, requesting an order requiring that plaintiffs build a bridge over Traver Creek.

The trial court granted judgment for defendants, ordering plaintiffs to build a bridge over Traver Creek at an estimated cost of between $10,000 and $25,000. The court also awarded miscellaneous damages to the defendants of $1,532.38. The court *sua sponte* concluded that the defendants were unnecessarily required to prove facts denied by the plaintiffs in their answer to the defendants' re-

quest for admissions of facts. The judge stated that the court rules require the taxing of costs in such instances and awarded costs to the defendants in the amount of $5,000. In addition to the $5,000, the court also ordered that the defendants be taxed $484.25 as additional costs, expenses and attorney fees.

The court ordered the plaintiffs taxed for any additional costs, expenses and attorney fees.

Plaintiffs appeal, claiming that the trial court erred in ordering them to construct a bridge over the creek, since paragraph "L" of the Rehberg—Ross and Rogers land contract was not enforceable against them. In support of this position, plaintiffs argue that paragraph "L" of the Rehberg—Ross and Rogers land contract was (1) intentionally excluded from the deeds given in fulfillment thereof, (2) merged in such deeds, and (3) does not run with the land.

Initially, we note that this is an equity action and our review is, therefore, *de novo.* However, great weight is given to the findings of the trial court and we will not substitute our judgment for its, unless convinced that we would have reached a different conclusion had we been sitting as the trial court. *Stribley v Michigan Marine, Inc,* 42 Mich App 218; 201 NW2d 702 (1972). Further, our Supreme Court has held that the "clearly erroneous" standard of GCR 1963, 517.1 applies to all non-jury trials and is consistent with the foregoing rules governing appellate review in equity cases. *Papin v Demski,* 383 Mich 561; 177 NW2d 166 (1970).

With respect to defendants' claim of merger, the trial court found:

"The court finds after having reviewed all the testimony taken in this case, the pleadings of the parties

hereto, and especially by application of the rules found in *Goodspeed v Nichols,* 231 Mich 308 [204 NW 122 (1925)]; *Mueller v Bankers Trust Co,* 262 Mich 53 [247 NW 103 (1933)], as a matter of law that the doctrine of merger does not apply in this case so as to relieve plaintiffs herein from the obligations set out under said paragraph 'L'. * * *

"This court further finds as a matter of law that the deeds executed between the parties hereto only constituted part performance of the agreement between the original party and that paragraph 'L' was and is a distinct and unperformed provision of the original contracting parties and that by virtue of such was not merged in the deed."

Having carefully reviewed the record in this case, we find that the trial court's reliance on *Goodspeed, supra,* and *Mueller, supra,* was wholly proper and that there was no error in the finding that the doctrine of merger does not apply to paragraph "L" of the land contract involved in this case. The covenant embodied in the paragraph "was collateral to the contract for the deed and an obligation independent of conveyance of title, possession, quantity, and emblements." *Mueller, supra,* 58. Hence, "the deed constitutes only a part performance of the preceding contract", and "other distinct and unperformed provisions of the contract are not merged in it." *Goodspeed, supra,* 316. *Michaels v Chamberlain,* 26 Mich App 317; 182 NW2d 360 (1970). Thus, defendants' claim of merger is without merit.

Defendants' argument that paragraph "L" of the land contract was intentionally excluded from the deeds given in fulfillment thereof is essentially one aspect of their more general argument that paragraph "L" did not run with the land. In 21 CJS, *Covenants,* § 54, p 923, it is noted:

"The essentials of such a covenant [i.e., a covenant

running with the land] have been stated to be that the grantor and grantee must have intended that the covenant run with the land; the covenant must affect or concern the land with which it runs; and there must be privity of estate between the party claiming the benefit and the party who rests under the burden."

In *Mueller,* p 56, our Supreme Court quoted with approval from *Keogh v Peck,* 316 Ill 318; 147 NE 266; 38 ALR 1151 (1925), to the effect that:

"The test as to whether a covenant runs with the land or is merely personal, is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or the estate conveyed. In order that a covenant may run with the land its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment."

The fact that the covenant in the instant case was affirmative in nature, *i.e.,* called for the performance of the specific acts by the covenantor, does not alter the applicability of the foregoing rules. Although in England and arguably in New York, it has been held that the burden of affirmative covenants does not run with the land, that rule has not been adopted generally throughout the United States and has no application in Michigan. See generally, Annotation, 68 ALR2d 1022 (1959), *Affirmative Covenants as Running with the Land; Adams v Noble,* 120 Mich 545; 79 NW 810 (1899); *Mueller, supra; Burton-Jones Development, Inc v Flake,* 368 Mich 122; 117 NW2d 110 (1962).

An examination of paragraph "L" of the original Rehberg—Ross and Rogers land contract supports the trial court's finding that the parties thereto intended that the covenant embodied in that paragraph would run with the land. It will be recalled that the paragraph in question provided:

"Purchaser agrees to perform grading and initial paving of the surface of said right-of-way and in addition thereto, to extend the present culvert completely across said right-of-way at the purchaser's expense. Subsequent maintenance of said right-of-way to be paid equally by seller and purchaser thereof."

Although it may be argued that the first sentence of paragraph "L" constitutes a personal covenant by Ross and Rogers to perform a noncontinuing service, it is nonetheless clear that the second sentence of that paragraph constitutes a continuing obligation. In light of the fact that the parties agreed to share equally the cost of maintenance, it seems clear that they viewed such maintenance as an obligation that would run with the land. Plaintiffs' argument that the omission from the deeds of the covenant is indicative of an intent that it not run with the land is not well founded. It may well be that both purchaser and seller understood that the covenant contained in the land contract constituted an obligation unaffected by the conveyance of the land itself. In other words, they may have understood that the conveyance by deed would not constitute a merger of all the terms of the underlying contract for sale. Indeed, plaintiffs' performance of the terms of paragraph "L" indicated that they, themselves, viewed the obligation as unaffected by the deed. In light of these facts, it cannot be said that the trial court erred in determining that the original par-

ties intended the covenant embodied in paragraph "L" to run with the land.

Paragraph "L" of the land contract obviously "touches and concerns" the use, value or enjoyment of the easement granted by Rehberg to Ross and Rogers, and by them to the plaintiffs in this case. The covenant deals with the improvement and maintenance of the easement itself and is obviously not for the personal benefit of the Rehbergs or any of the other parties involved in this suit. Rather, it is an undertaking the benefit of which inures to any subsequent owner of either the easement, the dominant, or the servient estate.

Next, there is no argument that plaintiffs are not in privity of estate with the original parties to the land contract, *i.e.,* the Rehbergs and Ross and Rogers. The chain of title with respect to both the easement and dominant estate is unbroken from the defendants to Ross and Rogers, and then to the plaintiffs. Obviously, the privity of estate requirement has been fulfilled in this case.

In this Court, as in the trial court, the parties have devoted a great deal of their effort to the question of whether or not plaintiffs took the land with notice of the covenant embodied in paragraph "L". With respect to this question, the trial court found:

"This court finds as a matter of fact in this regard that plaintiffs herein had actual knowledge of the content of paragraph 'L' or would have had knowledge of said paragraph 'L' had they examined documents referred to in their own escrow agreement or had they simply looked into the rights of defendants herein as set out in their agreements with plaintiffs' predecessors in title."

This finding is fully supported both by the fact that title to the land passed from the Rehbergs to

Ross and Rogers, and then to plaintiffs in essentially a single transaction, and further, by the fact that plaintiffs performed at least the first portion of the covenant embodied in paragraph "L" by paving, widening the road, and extending the culverts and replacing a 30-inch culvert with a 78-inch culvert. Plaintiffs, by their action, acknowledged the fact that paragraph "L" was an obligation binding upon them. The court's finding with respect to the question of whether or not plaintiffs took title to the land with knowledge of the covenant is not clearly erroneous.

On the basis of the foregoing considerations, we cannot say that the trial court's determination that the covenant ran with the land so as to bind plaintiffs is clearly erroneous.

Plaintiffs also claim that they had an absolute right, as upper riparian owners, to remove the culverts and sever the road, since the culverts acted as a dam and caused flooding on their land. However, unlike the cases cited by plaintiffs in support of their position, the dam-like construction was not an unlawful structure placed on the land by the defendants. Rather, the culverts formed part of the roadway which the plaintiffs covenanted, along with the defendants, to maintain. Plaintiffs cannot breach this covenant and permanently sever the road where a reasonable means exists to both fulfill the covenant and prevent future flooding of the apartments.

Plaintiffs next argue that the necessity of constructing the bridge was not within the contemplation of the original parties to the land contract and, therefore, the trial court erred in ordering such construction.

We can readily accept as true plaintiffs' assertion that the original parties to the contract never

foresaw the necessity of constructing a bridge. This does not, however, as plaintiffs urge, require a finding that the trial court erred in ordering the construction of a bridge.

The courts of this state have repeatedly held that "equity may shape her relief according to the situation as it may present itself when the time for the decree arrives". *Thompson v Enz,* 385 Mich 103, 110; 188 NW2d 579 (1971). The parties clearly did intend that defendants would have an improved access to Plymouth Road, and plaintiffs would have an easement over defendants' property for the same purpose. The trial court was faced with the situation in which the only feasible method of insuring that the originally expressed intent of the parties was fulfilled, was by ordering the construction of the bridge. Evidence was presented at trial which made it clear that culverts alone had not in the past, and probably would not in the future, relieve the problem of flooding. Thus, simply to order plaintiffs to reconstruct the roadbed, and utilize culverts for carrying the creek beneath it, would be only a temporary and wholly unsatisfactory solution to the problem. We cannot say, from the record before us, that the trial court erred in ordering the plaintiffs to construct the bridge.

We turn our attention now to plaintiffs' most forceful argument. Plaintiffs contend that, if the trial court was correct in requiring the construction of a bridge over Traver Creek in order to maintain the usefulness of the easement, then defendants should be required to contribute one-half of the cost of the construction of such bridge. In support of this contention, plaintiffs note that the second sentence of paragraph "L" of the land contract provides:

"Subsequent maintenance of said right-of-way to be paid equally by seller and purchaser thereof."

In response, defendants argue that, had plaintiffs properly constructed the roadway and culvert system in the first place, the flooding problem would never have arisen and that it is now inequitable, unfair and unjust to require defendants to contribute to the correction of a problem which had its genesis in plaintiffs' own failure to cope properly with the increased waterflow in Traver Creek.

Defendants' argument overlooks two important facts. First, the agreement was drawn up by the defendants' attorneys and, therefore, must be strictly construed against them. *Detroit Trust Co v Mason,* 309 Mich 281; 15 NW2d 475 (1944). Defendants' attorneys could have explicitly imposed an unlimited duty to provide the Rehbergs with access to Plymouth Road as a condition to the use of the easement. This was not done. Secondly, plaintiffs more than fulfilled the requirements of the first sentence of paragraph "L". Plaintiffs did "perform grading and *initial* paving of the surface" of the right-of-way. Plaintiffs not only extended "the *present* culvert" but increased its capacity by replacing one of the two 30-inch culverts with a 78-inch culvert. The words "initial" and "present" clearly indicate the intent of the parties that the plaintiffs were to bear alone only the *initial* cost of extending the roadway to its present 24-foot width. This portion of the covenant was completely discharged when the plaintiffs widened, graded and paved the surface and extended the culverts completely across the right-of-way, at their own expense.

While only the plaintiffs agreed to improve the right-of-way, as provided in paragraph "L", both

parties agreed "to maintain said right-of-way as provided in paragraph 'L'." In regards to the maintenance of the right-of-way following the initial improvement of the easement, paragraph "L" clearly states:

"Subsequent maintenance of said right-of-way to be paid *equally* by seller and purchaser thereof." (Emphasis added.)

The trial court correctly held that this covenant was binding on the plaintiffs. However, the trial court erred in failing to hold that this covenant was likewise binding on the defendants.

The clear intent of this provision is that the parties were to bear equally the expense of maintaining the right-of-way after its initial construction. As we have already indicated, the trial court did not err in ordering the construction of the bridge, since this was the only feasible method of maintaining the roadway and relieving the problem of flooding plaintiffs' apartments. Therefore, the portion of the court's order requiring the construction of a bridge over Traver Creek is affirmed. However, the judgment of the trial court is hereby modified to require that the costs of any construction be shared equally by plaintiffs and defendants.

Finally under attack is the trial court's assessment of costs:

"This court notes that much of the time spent during the trial of this matter were covering matters of proof set out in Rule 312 and Rule 313 demands made upon the plaintiff and is of the opinion that such proofs were unnecessary and the denials of such proofs by plaintiffs herein were frivolous and put defendants to expenses herein unnecessarily and finds that defendants herein should be, and hereby are, awarded costs in the amount

of $5,000 for such items of proof as were substantially covered in defendants' demands on plaintiffs herein for admissions of fact."

GCR 1963, 312.1 provides in part as follows:

" * * * a party may serve upon all other parties a written request for the admission by a designated party of the genuineness of any relevant documents described * * * or of the truth of any relevant matters of fact set forth in the request."

In 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed) p 27, the author states that such admissions may dispose of matters over which there is no serious dispute, and hence avoid waste of time and preparation and a trial on unnecessary proofs. However, the author also states that unless a matter is completely free of controversy, it is not likely that a formal request for admissions will prove successful. GCR 1963, 313.3 provides:

"If a party, after being served with the request under Rule 312 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matters of fact, he may apply to the court for an *order* requiring the other party to pay him the reasonable expenses in making such proof, including reasonable attorney fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made." (Emphasis supplied.)

An examination of the demands for admission of fact submitted to the plaintiffs discloses that the "facts" which the defendants sought to have the plaintiffs admit were, in reality, not "facts" but were elements of the defendants' claim.

It is stated in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 234:

"The mere fact that the matter was proved at the trial does not, of itself, establish that the denial in response to the request for an admission was unreasonable."

After finding that the defendants proved that the covenants contained in paragraph "L" were binding on the plaintiffs and ran with the land, the trial court improperly imposed costs on the plaintiffs for their failure to admit these elements of the defendants' case.

It should also be pointed out that at no time did the defendants "apply to the court for an order requiring the other party to pay him the reasonable expenses in making such proof." The plaintiffs, therefore, were improperly denied the opportunity to demonstrate to the trial court that their refusal to admit was reasonable and not improper. *Cf. Howard v City of Melvindale,* 27 Mich App 227; 183 NW2d 341 (1970). Therefore, the trial court abused its discretion in assessing costs against the plaintiffs.

Reversed and remanded to the trial court for the entry of an order consistent with this opinion. No costs, neither party having prevailed in full.

All concurred.