*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

        Plaintiff/Counterdefendant-Appellee,

v

ROBERT L. CARMACK and B&C LAND
DEVELOPMENT CORPORATION,

        Defendants/Counterplaintiffs/Cross-
        Defendants-Appellees,

and

MOBY DICK VENTURES LLC,

        Defendant/Cross-Plaintiff-Appellant.

UNPUBLISHED
April 11, 2025
2:23 PM

No. 368088
Wayne Circuit Court
LC No. 18-006137-CH

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant/cross-plaintiff, Moby Dick Ventures LLC (Moby Dick), appeals as of right the trial court's order quieting title to the property located at 7751 Melville Avenue, Detroit, MI 48209 (the property) to plaintiff/counterdefendant, the City of Detroit (the City). We affirm.

## I. FACTUAL BACKGROUND

The City owned the property since at least 1961. In 2007, defendant/counterplaintiff/cross-defendant, B & C Land Development Corporation (B&C), which was owned by defendant/counterplaintiff/cross-defendant, Robert L. Carmack (Carmack), made an offer to the City's Planning and Development Department (P&DD) to purchase the property for $250,000. The Detroit City Council approved the offer. According to the City, it was its standard business practice, when selling a piece of property, to mail copies of the deed, development agreement, title search, cover letter, and closing statement to the purchaser for review prior to the closing. Then,

-1-

at closing, the original documents, including the deed, would be provided to the purchaser in exchange for a cashier's check for the purchase price.

After City Council authorized the transaction, the executive manager of the P&DD drafted an undated quitclaim deed to complete the sale, which stated, "The City of Detroit . . . quit claims to [B&C] . . . [the property], for the sum of [$250,000]." The quitclaim deed was notarized and signed by the Director of Planning and Development, the Finance Director, and corporation counsel. The deed was then mailed to Carmack, along with closing documents, a title search, and a cover letter. The parties dispute whether the documents sent to Carmack, including the quitclaim deed, were marked "COPY." The closing statement, which was signed by a P&DD employee, named B&C as the purchaser of the property for $250,000, listed a closing dating of June 24, 2007, and stated: "SETTLEMENT ACCEPTED AS RENDERED." The closing, however, never occurred, and it is undisputed that neither B&C nor Carmack paid the City any part of the $250,000 set forth on the quitclaim deed.

At some point, in connection with his attempts to purchase another City-owned property, Carmack sent a letter to City Council in which he explained that he received a signed and notarized deed for the property in the mail without having paid for it.[1] In September 2012, Carmack, on behalf of B&C, recorded an affidavit of lost deed with the Wayne County Register of Deeds, representing that the quitclaim deed was lost. He averred in his affidavit that he purchased the property in 2007 and that a quitclaim deed was executed. Carmack attached to the affidavit what he stated was a copy of the executed quitclaim deed.

In March 2016, B&C sold the property to Moby Dick for $1 million and purported to convey title via a warranty deed. Prior to the sale, Moby Dick hired a title insurance company to examine the chain of title for the property. The title insurance company concluded that the City validly conveyed title to B&C in 2007. In connection with B&C's sale of the property to Moby Dick, a part of the $1 million purchase price was used to pay the Wayne County Treasurer's office a $246,000 delinquent tax bill associated with the property. It is unclear from the record whether those taxes were assessed against the City or B&C.

In 2018, the City filed the instant action seeking to quiet title to the property. Moby Dick filed a cross-complaint against Carmack and B&C seeking $1 million in damages in the event that the City was found to have superior title. Carmack and B&C filed counterclaims against the City for abuse of process and retaliation, which were dismissed. The case was stayed after Carmack was charged with various felonies related to the City's claims.[2] After the stay was lifted, Carmack moved for summary disposition under MCR 2.116(C)(5), arguing the property was conveyed by the City to B&C through a valid quitclaim deed. The City moved for summary disposition under MCR 2.116(C)(10), arguing that title must be quieted in its favor because the City never tendered

---

[1] It appears that Carmack also spoke about receiving the deed to the property without paying during a May 2012 City Council meeting.

[2] Carmack was charged with one count of False Pretenses, $100,000 or more, MCL 750.218(7)(A), and three counts of Uttering and Publishing a Document Affecting Real Property, MCL 750.249b, under Case No. 19-003870-01-FH. The charges were dismissed on July 10, 2024.

a deed to B&C with intent to convey title to the property. In response, Moby Dick asserted that title should be quieted in its favor because the City validly conveyed the property to B&C, and therefore the trial court should grant summary disposition to Moby Dick under MCR 2.116(I)(2). In addition, Moby Dick moved for summary disposition of its cross-complaint against Carmack and B&C under MCR 2.116(C)(10), arguing that, if the trial court entered a judgment quieting title in favor of the City, it must grant summary disposition against B&C and Carmack for breach of contract and indemnification for the amount paid for the warranty deed.

The trial court granted the City's motion for summary disposition, finding that "[t]he deed at issue in this case specifically states that the property is conveyed for consideration in the amount of $250,000.00. This amount was never tendered by Carmack to the City. Nor did the closing take place." The trial court explained:

> Even if the deed sent to Carmack had not been a copy, the clear intent of the parties is that the City would convey the property by quitclaim deed in exchange for $250,000.00. Because the closing never took place and Carmack never paid $250,000.00 to the City, the deed was inoperative to convey title to Carmack. The words of the deed demonstrate that the City's clear intent was to convey the property to Carmack in exchange for $250,000.00. Carmack's intent was to pay $250,000.00 in exchange for title to the property. By harmonizing the language of the deed, the intent of the parties was never fulfilled. Therefore, the purported deed was inoperative to convey the property to Carmack.

The trial court denied Carmack's motion under MCR 2.116(C)(5) as "meritless," because "there has been a failure of consideration and Carmack's false 'Affidavit for Lost Document' is not evidence of his ownership of the property." And the court granted Moby Dick's motion for summary disposition of its cross-complaint against Carmack and B&C because Carmack "misrepresented his purported ownership of the property to both the Register of Deeds and to Moby Dick." The trial court then entered judgment quieting title of the property in favor of the City and extinguishing "[a]ny and all recorded or unrecorded interest in and claim to the Property by Robert L. Carmack, B & C Land Development Corporation, or Moby Dick Ventures, LLC[.]" This appeal followed.[3]

## II. STANDARD OF REVIEW

This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cantina Enterprises II Inc v Prop-Owners Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3-4. "A genuine issue of material fact exists when the record

---

[3] Carmack filed a cross-appeal, which this Court dismissed "for want of prosecution, cross appellant having failed to timely file the docketing statement on cross appeal." *City of Detroit v Carmack*, unpublished order of the Court of Appeals, entered January 24, 2024 (Docket No. 368088).

leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 7. The court reviewing the motion "considers the parties' documentary evidence in the light most favorable to the party opposing the motion." *Cantina Enterprises*, ___ Mich App at ___; slip op at 4.

"A suit to quiet title or remove a cloud on a title is one in equity." *McFerren v B & B Inv Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). "Equitable rulings to quiet title, as well as questions of law in general, including interpretation of a court rule, are . . . reviewed de novo on appeal." *Richards v Tibaldi*, 272 Mich App 522, 528; 726 NW2d 770 (2006). "A deed is a contract, and the proper interpretation of the language in a deed is therefore reviewed de novo on appeal." *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009) (citations omitted). "In a quiet-title action, the plaintiff has the initial burden of establishing a prima facie case of title. If the plaintiff establishes a prima facie case of title, the burden shifts to the defendant to prove superior right or title." *1373 Moulin, LLC v Wolf*, 341 Mich App 652, 664-665; 992 NW2d 314 (2022) (cleaned up). "If the plaintiff established his title to the lands, the defendant shall be ordered to release to the plaintiff all claims thereto." MCL 600.2932(3).

## III. DISCUSSION

Moby Dick argues that title should be quieted in its favor because the City conveyed the property to B&C by delivering a facially valid quitclaim deed. We disagree.

On its face, the quitclaim deed appears to be valid. Under MCL 565.152, "any conveyance of lands" that is "duly signed, sealed, and acknowledged by the grantor, shall be deemed to be a good and sufficient conveyance in quit claim to the grantee." But, as Moby Dick acknowledges, in order to be a valid conveyance, the City must have delivered the deed with the intent to convey its interest in the property to B&C. See *Havens v Schoen*, 108 Mich App 758, 760-761; 310 NW2d 870 (1981).[4] The parties disagree about the City's intent in delivering the deed to B&C and dispute various aspects of the record in that regard. They disagree, for instance, about whether the quitclaim deed was marked "COPY," and whether the City assessed taxes against B&C related to the property. It is undisputed, however, that B&C never paid any of the consideration owed in exchange for conveyance of the property, contrary to the plain language of the quitclaim deed. We agree with the trial court that this undisputed fact is dispositive in this case and entitles to the City to have title quieted in its favor.

A court's "objective in interpreting a deed is to give effect to the parties' intent as manifested in the language of the instrument." *Mich Dep't of Nat Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). To that end, we are guided by four principles:

---

[4] Although this Court is "not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

(1) In construing a deed of conveyance, the first and fundamental inquiry must be the intent of the parties as expressed in the language thereof; (2) in arriving at the intent of parties as expressed in the instrument, consideration must be given to the whole of the deed and to each and every part of it; (3) no language in the instrument may be needlessly rejected as meaningless, but, if possible, all the language of a deed must be harmonized and construed so as to make all of it meaningful; (4) the only purpose of rules of construction of conveyances is to enable the court to reach the probable intent of the parties when it is not otherwise ascertainable. [*Id.* (cleaned up).]

The parties' intent is embodied in the express language of the quitclaim deed—the City would convey the property to B&C in exchange for $250,000. Because the consideration was never paid, delivery of the quitclaim deed was ineffective to convey title to the property. While delivery of the deed raises a presumption of intent to pass title, that presumption "is not conclusive and may be rebutted by the evidence," *Resh v Fox*, 365 Mich 288, 291-292; 112 NW2d 486 (1961), as it is here by the undisputed facts of this case. See also *Gibson v Dymon*, 281 Mich 137, 140; 274 NW 739 (1937) ("The whole object of the delivery of a deed is to indicate an intent upon the part of the grantor to give effect to the instrument. Any act presumptively a delivery will not be a delivery if the intent to make it such is wanting.") (citations omitted).

Moby Dick contends that, while the City may have a breach-of-contract claim against B&C for its failure to pay the consideration for the deed, that failure is immaterial to the effectiveness of the conveyance. We disagree.

A deed is a contract. *In re Rudell*, 286 Mich App at 402. And "[t]here is no enforceable contract where there is a failure of consideration." *Adell Broadcasting v Apex Media Sales*, 269 Mich App 6, 12; 708 NW2d 778 (2005). Accordingly, courts have long recognized that a deed may be set aside due to a failure of consideration. See, e.g., *Gerycz v Zagalski*, 230 Mich 381, 384; 203 NW 65 (1925) (setting aside deed for failure of consideration); *Lewandowski v Nadolny*, 214 Mich 350, 356; 183 NW 85 (1921) (concluding deed was properly set aside for failure of consideration); *Bennett v Bugbee*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2012 (Docket No. 307977), p 3 (holding that title was properly quieted in favor of the plaintiff where the record established that the defendant never paid the consideration set forth in the deed that was delivered to him).[5] The caselaw relied on by Moby Dick to the contrary is distinguishable, as those cases involved conveyances of property between family members without consideration. See *Kar v Hogan*, 399 Mich 529; 251 NW2d 77 (1976); *Parkinson v Guilloz*, 250 Mich 637; 231 NW 89 (1930); see also, e.g., *In re Rudell*, 286 Mich App at 403 (explaining that "[i]n general, a complete or substantial failure of consideration may justify the rescission of a

---

[5] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (quotation marks and citation omitted).

written instrument," but that "this general rule is not strictly applicable in the context of property transfers between a parent and a child").

Moby Dick relies on *Goodspeed v Nichols*, 231 Mich 308; 204 NW122 (1925), for its contention that the City's only manner of recourse is to bring a breach-of-contract action against B&C. In *Goodspeed*, the plaintiff sold property to the defendant on disputed terms, including about the condition of the plumbing, heating, and lighting systems in the home. *Id*. at 310. The defendant paid part of the consideration, received the deed, and made the necessary repairs to those systems. *Id*. at 311. When the defendant sought reimbursement for the repairs and the plaintiff refused to pay, the defendant withheld two installment payments owed as consideration for the property. *Id*. at 313. The plaintiff filed suit seeking to foreclose on the property and the defendant filed a cross-claim seeking reimbursement for the repairs. *Id*. The court affirmed the dismissal of the plaintiff's claims and the entry of judgment in favor of the defendant, concluding that, "where a contract of sale provides for the performance of acts other than the conveyance, it remains in force as to such acts, until full performance." *Id*. at 316.

Unlike this case, *Goodspeed* did not involve a complete failure of consideration. See *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 509; 885 NW2d 861 (2016) ("Failure of consideration is a seriously deficient contractual performance that causes a contract's basis or inducement to cease to exist or to become worthless.") (cleaned up). Rather, in *Goodspeed*, the defendant paid part of the consideration owed and the parties' dispute centered around the terms of their tangential agreement regarding the condition of the property. Thus, contrary to Moby Dick's assertion, *Goodspeed* does not support its contention that the failure of consideration is irrelevant to whether the City validly conveyed title to B&C and that the City's only recourse is damages claim against B&C for breach of contract.

Moby Dick also argues that the City is not entitled to judgment in its favor under the unclean-hands doctrine. "It is well settled that one who seeks equitable relief must do so with clean hands." *Attorney General v PowerPick Player's Club of Mich, LLC*, 287 Mich App 13, 52; 783 NW2d 515 (2010). "The unclean-hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the opposing party, and is only relevant to equitable actions or defenses." *Varela v Spanski*, 329 Mich App 58, 73-74; 941 NW2d 60 (2019) (cleaned up).

Moby Dick contends that the City acted with unclean hands by sending B&C a fully executed quitclaim deed, failing to rescind authorization for the sale, assessing taxes against the property, ignoring Carmack's statements to City Council regarding the deed, and failing to act in response to those statements. But the City's conduct does not give rise to the application of the unclean-hands doctrine. Moby Dick has not provided any basis to conclude that the City acted in bad faith, fraud, or a lack of morality in this matter. See *Attorney General v Ankersen*, 148 Mich App 524, 545; 385 NW2d 658 (1986) (holding that the unclean-hands doctrine was not applicable where there was no evidence that the defendant "acted in bad faith or with fraud" or "sought to mislead or deceive any other party[,]" and no evidence of "a lack of morality on the part of the [defendant]"). At most, the evidence may show that the City acted negligently with respect to the quitclaim deed, but "[m]ere negligence . . . do[es] not constitute facts giving rise to the application of the doctrine of unclean hands." *Id*.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani