LAKESIDE ASSOCIATES v TOSKI SANDS

Docket No. 68797. Submitted November 10, 1983, at Grand Rapids.—
Decided December 20, 1983.

    Lakeside Associates purchased a parcel of land including an
easement which had been granted by the seller to Toski Sands,
a copartnership consisting of Thomas D. Bradley and George E.
Gerrie. The easement, consisting of a gravel roadway, was
appurtenant to two adjacent parcels, one of which was at all
times titled in the names of Bradley and Gerrie and their
wives, the other being deeded at one time to the Toski Sands
partnership and later back to the Bradleys and the Gerries. All
of the deeds, including the one pertaining to the easement
involved herein, were properly recorded. Subsequent to its
purchase of the property Lakeside Associates paved the road-
way, constructed a median, and lined the sides of the roadway
with logs and trees which, according to Toski Sands, blocked
access to one of the parcels. That parcel was currently a vacant
lot. Lakeside Associates brought an action in Emmet Circuit
Court, seeking a declaration that only the parcel being used by
defendants was benefitted by the easement. Toski Sands coun-
terclaimed, seeking an injunction to require removal of the
median, logs, and trees. The trial court, Martin B. Breighner,
J., ruled that the deed granting the easement was ambiguous
and allowed parol evidence to establish the intent of the parties
when they drafted the easement. The court then found that
both of the defendants' parcels were part of the dominant estate.
The court denied defendants' request for an injunction, how-
ever, finding that the improvements did not interfere with the
current use of the vacant lot or with any known future use of
the lot. The court retained jurisdiction of the case to allow
defendants ready access to the court in the event of an in-

REFERENCES FOR POINTS IN HEADNOTES
[1] 66 Am Jur 2d, Records and Recording Laws §§ 157, 163.
    77 Am Jur 2d, Vendor and Purchaser §§ 663, 664.
[2] 25 Am Jur 2d, Easements and Licenses §§ 97, 98.
    77 Am Jur 2d, Vendor and Purchaser § 691.
[3] 25 Am Jur 2d, Easements and Licenses § 72.

fringement of their rights. Plaintiff appealed, and defendants cross-appealed. *Held:*

1. Lakeside Associates does not qualify as a bona fide subsequent purchaser without notice. The record indicates that Lakeside was in possession of facts which would lead a reasonable person to make further inquiries regarding the extent of the easement, which it failed to do. Parol evidence was admissible to clarify the intentions of the parties who drafted the easement. The trial court did not err in finding that both of defendants' lots are entitled to the benefits of the easement.

2. The court did not err in denying the injunction, because the improvements did not interfere with the defendants' current or contemplated use of the property benefitted by the easement.

Affirmed.

1. PROPERTY — PURCHASE OF LAND — RECORDING OF INTERESTS IN LAND.

A subsequent bona fide purchaser of land cannot be bound by the intentions of prior contracting parties with alleged interests in the land if those intentions are not reflected in the public record; owners of interests in land may protect their interests by properly recording them (MCL 565.29; MSA 26.547).

2. PROPERTY — PURCHASE OF LAND — EASEMENTS — NOTICE.

A purchaser of land subject to an easement who is in possession of such facts as would lead a reasonable person to make further inquiries into the extent of the easement should be taken to have had notice of those facts which he would have discovered had he used ordinary diligence and, therefore, does not qualify as a bona fide subsequent purchaser without notice of those facts.

3. EASEMENTS — USE OF LAND — RIGHTS OF LANDOWNER.

The owner of land subject to an easement may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement; the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil.

*John F. Rohe,* for plaintiff.

*Stroup, Brown & Mulhauser, P.C.* (by *Nathaniel W. Stroup),* for defendants.

Before: Allen, P.J., and R. M. Maher and R. H. Bell,* JJ.

Per Curiam. This appeal and cross-appeal involve the extent of an easement appurtenant which was granted by plaintiff Lakeside Associates' predecessors-in-interest (the Mulvaneys) to "Toski Sands, a co-partnership consisting of Thomas D. Bradley and George E. Gerrie" and the trial court's determination that Lakeside Associates' "improvements" to the easement (a 500-foot by 66-foot roadway) did not unreasonably infringe on Toski Sands' use of the easement.

In 1967, George E. Gerrie and Thomas D. Bradley formed a copartnership called Toski Sands and, using partnership money, bought two adjoining parcels of land with a combined length of 500 feet, designated at trial as lots C and D. The deeds were titled in the names of George E. and Carrie L. Gerrie, husband and wife, and Thomas D. and Betty J. Bradley, husband and wife. The deeds were recorded. In 1969, for various business reasons, parcel C was quitclaim deeded by George E. and Carrie L. Gerrie and Thomas D. and Betty J. Bradley to Toski Sands, a copartnership. This deed was also recorded. Parcel C had a length of 200 feet.

Lots C and D bordered on a private road owned by the Mulvaneys, who also owned lot "A". In June, 1974, Mr. Gerrie and Mr. Bradley approached the Mulvaneys to buy an easement along the 500 feet of the private road which abutted lots C and D. According to the testimony at trial, Mr. Gerrie and Mr. Bradley paid $1,000 for an easement "for road purposes" which was intended to benefit *both* lots C and D. Mr. Mulvaney testified

* Circuit judge, sitting on the Court of Appeals by assignment.

that he understood that both C and D were owned by the Toski Sands copartnership and that he, in fact, believed C and D were only one parcel. He was specifically told during negotiations that the easement was to benefit all 500 feet of the Toski Sands' property because "at some future date they [Toski Sands] wished to develop the back [D] of the property". The Mulvaneys, Mr. Gerrie, and Mr. Bradley also agreed that the easement would be for a road 66 feet in width; this width was required by MCL 221.20; MSA 9.21 and MCL 224.11; MSA 9.111 to dedicate the private road as a county road as the Mulvaneys and the copartners eventually hoped to do. Mr. Mulvaney's attorney drafted a deed and an agreement which granted a "permanent easement for road purposes", 500 feet long and 66 feet wide, to "Toski Sands, a co-partnership consisting of Thomas D. Bradley and George E. Gerrie". This deed was recorded in 1978.

In March, 1979, parcel C was deeded back to Thomas D. and Betty J. Bradley and George E. and Carrie L. Gerrie by the Toski Sands copartnership, and the deed was recorded immediately.

In November, 1979, Lakeside Associates signed a buy-sell agreement with the Mulvaneys to purchase lot A. In negotiations for this property, Mr. Latimer Spinney, the general partner of Lakeside Associates, testified that he was told by Mr. Mulvaney that there was a 500-foot easement "for the party store [Toski Sands ran a party store and carry-out operation on lot C] to give truck access". He was never told By Mr. Mulvaney that the 500-foot easement was intended to benefit lot D. Mr. Mulvaney testified that he told Mr. Spinney "there was an easement to the Toski Sands for the length of their property which we presumed and thought to be five-hundred feet * * *". Mulvaney drew a

picture showing the easement and gave a copy to Spinney. The picture showed the Toski Sands property as one 500-foot-long parcel with a width of 300 feet. Spinney informed Lakeside Associates' attorney William Conn, a future limited partner in the enterprise and an experienced real estate attorney, of the easement to "Toski Sands", and Conn conducted a title search to discover what property was owned by the Mulvaneys and what easements, etc. existed on that property. He discovered the 1974 easement deed from the Mulvaneys to "Toski Sands, a co-partnership consisting of Thomas D. Bradley and George E. Gerrie" and saw that the easement was for 500 feet. However, he also saw that the deed was ambiguous because it did not specify whether the easement was to be appurtenant (running with the land) or in gross (personal to the grantees only), because it did not specify the dominant estate. From his knowledge of property law, he knew that if the easement was to an adjoining landowner, it would be appurtenant. He therefore set out to discover if any of the adjoining landowners was named "Toski Sands". He found the 1969 deed from the Bradleys and Gerries deeding the 200-foot-long parcel C to "Toski Sands, a co-partnership", and concluded from this that the easement was appurtenant. He also concluded that only parcel C was a beneficiary of the easement because only C bore the Toski Sands name, although he knew the easement was for 500 feet and parcel C was only 200 feet long. He did not check subsequent records and so did not discover that parcel C had been deeded back to the Gerries and Bradleys in March, 1979. Lakeside Associates subsequently entered into the buy-sell agreement with the Mulvaneys for lot A.

Problems developed when Lakeside Associates

put in an 80- by 14-foot median at the beginning of lot D in the middle of the private road. Lakeside Associates also lined the edges of the road with logs and fir trees which, according to Toski Sands, blocked access to and from the easement onto lot D. Lakeside Associates claimed that the easement did not benefit lot D, while Toski Sands claimed it had bought an easement giving it access along all 500 feet of lots C and D. Lakeside Associates sought a declaratory judgment that only lot C was benefitted by the easement, and Toski Sands counterclaimed for an injunction to force Lakeside Associates to remove the median, logs, and fir trees.

The trial court ruled that the deed granting the easement to Toski Sands was ambiguous because it did not name the dominant estate, and therefore admitted parol evidence of the Mulvaneys' and Mr. Bradley's and Mr. Gerrie's intent when they drafted the agreement. Based upon this evidence, the court ruled that parcel D was also part of the dominant estate. However, the court denied Toski Sands' request for an injunction because the median, fir trees, and logs did not interfere with either the current use (a vacant lot) of D or any known future use.

On appeal, Lakeside Associates argues that the trial court committed reversible error when it admitted parol evidence of the contracting parties' intentions when they originally entered into the easement agreement. Lakeside Associates contends that it was a subsequent bona fide purchaser and that therefore the property interests recorded on the public record, on which Lakeside Associates relied, constitute the extent of the property interests in the private road. It further contends that if the original parties failed to accurately and fully

record their property interests parol evidence of their intentions might be admissible to settle any dispute between them, but it is not admissible against a subsequent bona fide purchaser who relied on the public record.

We agree that if the intentions of the original contracting parties are not reflected in the public record, a subsequent bona fide purchaser who has relied upon the public record cannot be bound by those unrecorded intentions. Michigan is a race-notice state, MCL 565.29; MSA 26.547, and owners of interests in land can protect their interests by properly recording those interests. Therefore, if Lakeside Associates was in fact a subsequent purchaser without notice of Toski Sands' full interests in the private road, the trial court's decision to admit the parol evidence against Lakeside Associates was erroneous.

However, our *de novo* review of the record, *Walker v Bennett,* 111 Mich App 40; 315 NW2d 142 (1981), convinces us that Lakeside Associates does not qualify as a subsequent purchaser without notice. We believe that Lakeside Associates was in possession of such facts as would lead a reasonable man to make further inquiries into the extent of the easement sold to "Toski Sands, a co-partnership consisting of Thomas D. Bradley and George E. Gerrie", and that therefore Lakeside Associates should be taken to have had notice of those facts which it would have discovered if it had used ordinary diligence. *Dassance v Nienhuis,* 57 Mich App 422, 431-432; 225 NW2d 789 (1975). In negotiations with the Mulvaneys to purchase their interests in lot A and the private road, Lakeside Associates was informed by Mr. Mulvaney that "there was an easement to the Toski Sands for the length of their property which we

[the Mulvaneys] presumed and thought to be five-hundred feet * * *". Mr. Spinney, the general partner of Lakeside Associates, testified that he was only told there was a 500-foot easement "for the party store to give truck access" and that he was never told the easement was intended to benefit lot D. However, the drawing made by Mr. Mulvaney and given to Lakeside Associates showed only *one* 500-foot-long parcel designated as owned by "Toski Sands carry out and grocery". Even if this were insufficient to put Lakeside Associates on notice that the easement benefitted both lots C and D, the further discoveries that the deed granting the easement lacked any reference to a dominant easement and that lot C, the only lot designated as owned by "Toski Sands", was only 200 feet long, should have caused Lakeside Associates to ask the Mulvaneys about the extent of the easement. Finally, the named partners in the Toski Sands copartnership also owned, with their wives, the 300-foot-long parcel adjoining lot C. We believe that this combination of facts known to Lakeside Associates would have led a reasonable person to make further inquiries, and we therefore affirm the trial court's determination that lot D is entitled to the benefits of the easement.

We also affirm the trial court's decision to deny Toski Sands' request for an injunction to require Lakeside Associates to remove the 80-foot by 14-foot median and logs and fir trees lining the road. The relative rights of an easement grantee and the owner of the fee subject to the easement were stated in *Harvey v Crane,* 85 Mich 316, 322-323; 48 NW 582 (1891):

"1. That the conveyance of a right of way gives to the grantee not only a right to an unobstructed passage at

all times over defendant's land, but also such rights as are incident or necessary to the enjoyment of such right of passage.

"2. The owner of the way, where its limits are defined, has not only the right of a free passage over the traveled part, but also to a free passage on such portions of the way as he thinks proper or necessary.

"3. The owner of the fee subject to an easement may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement.

"4. The rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil.

"5. The owner of the soil is under no obligation to repair the way, as that duty belongs to the party for whose benefit it is constructed.

"6. What may be considered a proper and reasonable use by the owner of the fee, as distinguished from an unreasonable and improper use, as well as what may be necessary to plaintiff's beneficial use and enjoyment, are questions of fact to be determined by the trial court or jury." (Citations omitted.)

Here, the owner of the fee (Lakeside Associates) had paved the formerly gravel road, lined the road edges with logs and fir trees for safety purposes, and installed a median at the beginning of lot D. Toski Sands, in the person of Mr. Gerrie, testified that access to lot C was not barred although driveway aprons had been installed to channel traffic in and out of the party store parking lot more safely. Access to lot D was available to cars on both the east and west sides of the property, but trucks could not get onto the lot. However, because the current use of the property was as a vacant lot, and because there were no plans calling for development of the property, there was no reason for trucks to enter the property. The trial court concluded that there was no immediate or

likely interference with Toski Sands' enjoyment of the roadway easement and denied the injunction. The trial court retained jurisdiction of the case, however, to give Toski Sands ready access to the court if its rights were ever infringed. We believe that this was an equitable disposition of the case which adequately protected the parties' rights.

Affirmed.