# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA S. MANLEY, MARY MATTERN,
TIMOTHY MATTERN, JANET B. MATTERN,
EMORY MULHOLLAND, PAM
MULHOLLAND, RICHARD SEBRING, and
MICHAEL SMILEY,

UNPUBLISHED
December 6, 2016

Plaintiffs-Appellees,

v

No. 327510
Lenawee Circuit Court
LC No. 89-004109-CH

SUE PIKULSKI, also known as SUE HAWKINS,
and JOSEPH A. PIKULSKI, JR.,

Defendants-Appellants.

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendants Sue Pikulski and Joseph Pikulski appeal as of right the trial court's June 25, 2014 order denying the parties' motions for summary disposition, the trial court's November 21, 2014 opinion and order entered after the bench trial in this case, and the trial court's May 14, 2015 final judgment denying defendants' posttrial motions and closing the case. We affirm the trial court's opinions and orders, but remand is necessary for the trial court to determine a maximum width for the constructed pathway provided for in its November 21, 2014 order.

## I. FACTUAL BACKGROUND

In August and December 1959, Farland R. Myers and Anna H. Myers, the previous owners of defendants' property, entered into several easement agreements that had substantively identical terms. In relevant part, the agreements provided:

> This indenture, made this 3rd day of December, 1959 by and between Farland R. Myers and Anna H. Myers, of Toledo, Ohio, grantors, and [the grantees],

> Witnesseth:

> That, for and in consideration of the sum of One Dollar and other valuable considerations in hand paid by the grantee, the receipt whereof is hereby

-1-

acknowledged do hereby grant unto the grantees, [the owners of specific lots in the Oak Shade Park Subdivision in] Cambridge Twp., Lenawee County, Michigan, and to subsequent owners of [the specific lots] or occupiers of [the specific lots] as tenants in possession, only, access for pedestrian traffic only, along Outlet No. A. Supervisors Plat No. 2, a part of Lot No. 2, Government Survey N E 1/4 Fractional Section 2, T. 5 South, Range 2 East, Cambridge Twp., Lenawee Co., Michigan according to the Plat thereof recorded in Liber 6 page 47 of Plats, to Wampler's Lake and the right to maintain only one boat but no motorized rafts at the lake dock on the frontage of said Outlet A provided grantees, subsequent owners or occupying tenants of said premises pay their proportionate share of the expense of maintaining the dock and of keeping it in good condition.

It is further understood and agreed by both parties hereto that it is a condition of this easement and binding upon grantee, subsequent owners, and occupying tenants that the way of access must be kept clear at all times and that the grantors, their heirs and assigns may designate the path of access as they see fit.

In February 1989, Linda S. Manley, Donald J. Mattern, Mary C. Mattern, Mary E. Mattern, William P. Mulholland, Vivian M. Mulholland, Ronald Saraniecki, Richard Sebring, and Shirley Sebring filed a complaint against Sue Hawkins,[1] Joseph A. Pikulski, Jr., and Kenneth Richardson, alleging that the defendants had wrongfully and substantially interfered with the plaintiffs' use of the easement, and attempted to force the plaintiffs to abandon the easement, through a variety of actions. Accordingly, the plaintiffs requested, *inter alia*, a declaration of their rights and a permanent injunction enjoining the defendants from interfering with the plaintiffs' rights, which would be binding on the parties' successors in interest.

In March 1989, the defendants filed an answer to the plaintiffs' complaint, in which they denied the plaintiffs' allegations of interference. They also filed a counter-complaint in which they contended that the plaintiffs, as well as their guests and invitees, had violated the easement by using Outlot A and other property in a variety of ways. Accordingly, the defendants requested, among other things, temporary and permanent injunctive relief requiring the plaintiffs to strictly comply with the terms of the easement agreements, requiring the plaintiffs to stay within the way of access designated by the defendants and only use it as a walkway, and requiring a series of restrictions concerning the placement of the plaintiffs' dock.

More than a year of litigation followed. On May 9, 1990, the date set for trial, the parties placed a settlement on the record. On March 18, 1991, an order was entered consistent with the parties' settlement.

---

[1] Sue Hawkins is now married to Joseph Pikulski and is a defendant in the instant appeal.

In September 2013, the plaintiffs at issue in the instant appeal[2] filed a petition for a permanent and interim injunction, as well as other relief, against defendants Sue Pikulski and Joseph A. Pikulski, Jr. In October 2013, defendants filed a response to plaintiffs' petition, denying plaintiffs' claims of wrongful conduct and requesting that the trial court deny plaintiffs' request for relief. After subsequent filings and proceedings, the trial court denied both parties' motions for summary disposition and other requests for pretrial relief. The trial court then held a four-day bench trial.

In October 2014, both parties submitted proposed findings of fact and conclusions of law. On November 21, 2014, the trial court entered its opinion and order. Most relevant to this appeal, it found, "The 1991 Order which represents the Stipulated Agreement of the parties altered the terms of the 1959 easement as to the walkway and to the maintenance of boats on Wampler's Lake." It made the following findings of fact:

> The 1991 Order is clear that the easement holders may place their boats due east or dead east to be in compliance with said Order. Therefore . . . the current practice employed by Plaintiffs is in compliance and the 1991 Order pertaining to mooring of boats, facing easterly along the west side of the dock shall not be disturbed.

> Testimony was provided by Plaintiffs and Defendant regarding the installation of the concrete break wall installed by Defendant Pikulski. The concrete wall interrupts the natural flow of the water and Plaintiffs' use and enjoyment of a beach feature formerly available to them as easement holders. Defendant may not unilaterally change the nature of the land or interfere with Plaintiffs' use.

> The garden fence placed by Defendant along the walkway used by Plaintiffs is of no consequence. It is too small, too light, and too easily moved and manipulated. The walkway as is prevents foot traffic and clear parameters for guidance. The fence was placed in the ground by Defendant solely to preclude or inhibit Plaintiffs' use. The fence was an attempt to make foot traffic impassible or at best, impracticable.

> Neither the 1959, nor the 1991 Order pertaining to the walkway is ambiguous. The easement holders have a right to occupy the property at issue to the extent necessary to fully enjoy the rights conferred by the easement document. The owner of the land burdened by the easement cannot block the easement or otherwise take such action as may constitute an unreasonable interference with

_____

[2] In June 2014, plaintiffs filed a motion for a substitution of parties, based on the death of original plaintiffs to the action giving rise to the 1991 order and subsequent sales of property benefitted by the easement, so that the current title holders or occupants of the subject properties were listed as plaintiffs in the current action. The trial court granted the substitution.

the easement holders' use. Further, Defendant may not unilaterally block or change the easement.

Accordingly, it ordered:

> That Plaintiffs may moor their boats on the west side of their dock, facing due east, dead east, or in an easterly direction;
>
> That Defendant shall, on or before July 1, 2015, remove the concrete structure, the break wall, at the northern end of Outlot A, thereby reestablishing the beach front currently enjoyed by the easement holders;
>
> That the easement holders shall install a walkway, no less than 5 (five) foot wide along the easternmost side of Outlot A. Said walkway may be wood, concrete, blacktop, stone or any other material appropriately designated by Plaintiffs. Plaintiffs shall bear the expense associated with materials and installation of the walkway. Said walkway shall comply with any and all State and local building regulations;
>
> That in all other respects, the Orders and Agreements between the Plaintiffs and Defendants remain in full force and effect.

Subsequently, defendants filed motions requesting amendment of the trial court's opinion and order, a new trial or other appropriate relief, and further clarification, in which they argued, *inter alia*, that the trial court's findings were against the great weight of the evidence admitted at trial, and that the trial court erred by failing to address many of the purported violations of the easement agreement and 1991 order that they raised in their counter-petition and litigated at trial. Ultimately, the trial court denied defendants' motions, except for their request that the trial court clarify whether a final order closing the case had been entered, explaining that it believed that the findings and conclusions in its November 21, 2014 opinion and order were sufficient, and that further findings were unnecessary given the language of the 1991 stipulated order.

Defendants now appeal as of right.

## II. STANDARD OF REVIEW

"The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). Likewise, "[t]he scope and extent of an easement" and "whether the scope of an easement has been exceeded" are generally questions of fact that are "reviewed for clear error on appeal." *Wiggins v City of Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011). See also *Bang v Forman*, 244 Mich 571, 573; 222 NW 96 (1928). Stated differently, "[w]hat may be considered a proper and reasonable use by the owner of the fee, as distinguished from an unreasonable and improper use, as well as what may be necessary to [the easement holder's] beneficial use and enjoyment, are questions of fact to be determined by the trial court or jury." *Lakeside Assoc v Toski Sands*, 131 Mich App 292, 300; 346 NW2d 92 (1983). A trial court's "factual findings are clearly erroneous if there is no evidence to support them or there is evidence to support them but this Court is left with a definite and firm conviction

that a mistake has been made." *A & M Supply Co v Microsoft Corp*, 252 Mich App 580, 588; 654 NW2d 572 (2002) (quotation marks and citation omitted). " '[G]reat deference' [is] generally afforded to trial courts, which are in a better position to examine the facts." *Hill v City of Warren,* 276 Mich App 299, 308; 740 NW2d 706 (2007) (citation omitted).

However, the proper interpretation of the language in an easement or deed is reviewed *de novo* as a question of law, *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009), as the principles applicable to contract interpretation similarly apply when a court reviews the language establishing an easement, see *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008); *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). See also *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997). Likewise, "[i]nterpreting the meaning of a court order involves questions of law that we review de novo on appeal." *Hanton v Hantz Fin Services*, Inc, 306 Mich App 654, 660; 858 NW2d 481 (2014) (quotation marks and citation omitted).

Even though appellate courts generally review *de novo* a trial court's determination that equitable relief is proper under the circumstances, *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008), this Court reviews the grant or denial of injunctive relief for an abuse of discretion, *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008); *Martin v Murray*, 309 Mich App 37, 45; 867 NW2d 444 (2015); *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). "An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).[3]

III. REMOVAL OF THE BREAKWALL

Defendants first contend that the trial court erred when it ordered them to remove the concrete breakwall. We disagree.

"An easement is a right to use the land of another for a specific purpose." *Bowen v Buck & Fur Hunting Club,* 217 Mich App 191, 192; 550 NW2d 850 (1996). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald*, 225 Mich App at 35, citing *Morrill v Mackman,* 24 Mich 279, 284 (1872). As such, "the owner of a fee subject to an easement may rightfully use the land only for a purpose consistent with the rights of the owner of the easement[.]" *Smith v Edwards*, 249 Mich App 199, 209-210; 645 NW2d 304 (2002). See also *Harr v Coolbaugh*, 337 Mich 158, 165-166; 59 NW2d 132 (1953) ("[T]he owner of the servient estate may make any use of the premises not inconsistent with easement.") (emphasis omitted). Stated differently, the fee owner may make any use of his land as long as it does not unreasonably interfere with the easement holder's use of the land. *Lee v Fidelity Life & Income Mut Ins Co,* 2 Mich App 82, 86-87; 138

---

[3] Defendants' summary disposition and directed verdict claims fail for the same reasons discussed in this opinion.

NW2d 545 (1965), citing 2 Thompson Real Property (1961 Rev), Easements, § 431, p 719, and *Kirby v Meyering Land Co*, 260 Mich 156; 244 NW 433 (1932). See also *Murphy Chair Co v Am Radiator Co*, 172 Mich 14, 28-29; 137 NW 791 (1912). Likewise, "[t]he owner of the right of way has the right to a reasonably unobstructed passage at all times, and also such rights as are incident or necessary to the enjoyment of such right of passage." *Murphy Chair Co*, 172 Mich at 29. See also *Blackhawk Dev Corp*, 473 Mich at 41-42 ("It is an established principle that the conveyance of an easement gives to the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement.") (quotation marks and citation omitted).

"Once granted, an easement cannot be modified by either party unilaterally." *Schadewald*, 225 Mich App at 36. If the owner of the servient estate interferes with an easement owner's use of the easement, the easement owner may bring an action—seeking damages, an injunction, or both types of remedies—in order to enforce the easement. See, e.g., *Choals v Plummer*, 353 Mich 64, 73; 90 NW2d 851 (1958); *Hasselbring v Koepke*, 263 Mich 466, 476; 248 NW 869 (1933); *Soergel v Preston*, 141 Mich App 585, 587-588, 590-591; 367 NW2d 366 (1985); *Bd of Comm'rs v Abraham*, 93 Mich App 774, 781; 287 NW2d 371 (1979).

> When an injury is irreparable, or the interference is of a permanent or continuous character, or the remedy at law will not afford adequate relief, a bill for an injunction is an appropriate remedy. 10 Michigan Law & Practice, Easements, § 34, p 128. The granting of injunctive relief is within the sound discretion of the court, and the decision must be based on the facts of the particular case. [*Soergel*, 141 Mich App at 589-590.]

See also *Janet Travis, Inc*, 306 Mich App at 274-275; 2 Restatement Property, 3d, Servitudes, § 8.3, pp 495-496 ("Injunctive relief is normally available to redress violations of easements and restrictive covenants without proof of irreparable injury or a showing that a judgment for damages would be inadequate."). Notably, the Michigan Supreme Court previously stated, "The violation of complainants' rights by the erection of a permanent structure obstructing an easement and right of way created by deed will be relieved by injunction in a court of equity." *Kirby v Meyering Land Co*, 260 Mich 156, 167; 244 NW 433 (1932) (quotation marks and citations omitted).

It is undisputed that plaintiffs were entitled, under the 1959 easement agreements, to use the easement for pedestrian access to Wampler's Lake, and that plaintiffs also were entitled, under the 1991 stipulated order, "to utilize[] the beach on the lake front of 'Outlot A' as far south as the current position of the north-east corner of defendants' house for such purposes as the supervision of young children in the water at the lake front of 'Outlot A,' " as long as the easement holders did not go further than the endpoints indicated in the order. After hearing the evidence presented at trial, the trial court concluded:

> Testimony was provided by Plaintiffs and Defendant regarding the installation of the concrete break wall installed by Defendant Pikulski. The concrete wall interrupts the natural flow of the water and Plaintiffs' use and enjoyment of a beach feature formerly available to them as easement holders. Defendant may not unilaterally change the nature of the land or interfere with Plaintiffs' use.

Accordingly, the trial court ordered "[t]hat Defendant shall . . . remove the concrete structure, the break wall, at the northern end of Outlot A, thereby reestablishing the beach front currently enjoyed by the easement holders[.]" In so holding, the trial court implicitly found that removal of the wall was necessary for plaintiffs' use of the beach, and that defendants' installation of the easement was inconsistent with plaintiffs' rights and unreasonably interfered with plaintiffs' reasonable use of the easement. See *Blackhawk Dev Corp*, 473 Mich at 40; *Harr*, 337 Mich at 165-166; *Smith*, 249 Mich App at 209-210; *Lakeside Associates*, 131 Mich App at 300; *Lee*, 2 Mich App at 86-87. The trial court did not clearly err in so finding, especially given the " 'great deference' [that this Court] generally afford[s] to trial courts, which are in a better position to examine the facts." *Hill*, 276 Mich App at 308.

On appeal, defendants mischaracterize the testimony provided by plaintiffs' witnesses, stating, "In fact, the Easement Holders' witnesses conceded that the breakwall was an improvement over the old set-up." Although plaintiffs' witnesses confirmed that the breakwall provided a flatter, sturdier foundation for plaintiffs' dock, defendants fail to acknowledge trial testimony demonstrating that defendants' installation of the breakwall significantly inhibited plaintiffs' access to, and use of, the beach area. Additionally, even though defendants testified that there still was a beach between the breakwall and the water, that the breakwall did not "hurt" the beach area, and that whether the water "butts up against the concrete wall" depends on the level of the lake, it appears that the trial court believed that the contrary was true following its visit to Outlot A. The photographs admitted at trial similarly show that the wall significantly reduced or fully eliminated the beach area.[4] Given this evidence, the trial court did not clearly err in concluding that removal of the breakwall was necessary for plaintiffs' reasonable use of the beach area under the 1991 stipulated order. See *Lakeside Assoc*, 131 Mich App at 300; *A & M Supply Co*, 252 Mich App at 588.

Contrary to defendants' claims, whether installation of the breakwall was a "per se reasonable" action in their estimation in order to prevent further erosion of the property is not relevant, as the pertinent focus is whether defendants' *interference* was reasonable—not whether the act itself would be objectively reasonable without considering the terms of the easement—given defendants' duty to refrain from any unreasonable interference with plaintiffs' reasonable use of the easement. See *Murphy Chair Co*, 172 Mich at 28-29; *Smith*, 249 Mich App at 209-210; *Lee*, 2 Mich App at 86-87. Likewise, whether defendants' installation of the breakwall was *expressly* prohibited under the 1959 easement agreements or the 1991 stipulated order is not dispositive, as the appropriate inquiry is whether defendants' actions were inconsistent with plaintiffs' rights under the agreement, or whether defendants' act unreasonably interfered with plaintiffs' rights. See *Smith*, 249 Mich App at 209-210; *Harr*, 337 Mich at 165-166. Furthermore, contrary to defendants' claims on appeal, there is no basis in the record for

---

[4] Notably, at the hearing on defendants' motions requesting amendment of the trial court's opinion and order, a new trial or other appropriate relief, and further clarification, the trial court emphasized its conclusion that there is no beachfront as a result of the breakwall, and that the easement holders are now required to access the water over a wall, which is impossible for someone with a walker.

concluding that the breakwall "saved" the beach area. Rather, as previously discussed, the testimony and photographic evidence confirms that the breakwall wholly altered the portion of the easement adjacent to the lake and effectively eliminated the beach area.[5]

Thus, the trial court did not abuse its discretion when it issued an injunction requiring defendants to remove the breakwall, as defendants' unilateral change of the property—which affected plaintiffs' access to the water as well as the character of the beach—obstructed and interfered with plaintiffs' rights to use the beach area in accordance with the 1991 order.

## IV. CONSTRUCTION OF WALKWAY

Next, defendants contend, for a variety of reasons, that the trial court erred when it ordered plaintiffs to construct a walkway along Outlot A. We disagree, except to the extent that we find that remand is required so that the trial court may establish a maximum width for the walkway.

First, the trial court did not clearly err in concluding that "[t]he walkway as is prevents foot traffic and clear parameters for guidance." The evidence presented at trial supported this conclusion and demonstrated that a constructed walkway was necessary and reasonable for plaintiffs' use of the easement. See *Blackhawk*, 473 Mich at 41-42. Photographs and witness testimony indicated that the garden fence was flimsy and easily moved or damaged, confirming the trial court's conclusion that it did not clearly demarcate the pathway established by defendants. Additionally, witnesses testified at trial that the unevenness of the pathway makes it difficult for some people to maintain their footing, and that the narrow width of the pathway defined by defendants makes it impossible to walk down the pathway while holding a child's hand or while walking side-by-side with another adult, impossible to carry a paddle boat or canoe down the path, difficult to carry an inner tube down the path, and impossible for easement holders in wheelchairs to access the lake. Additionally, when plaintiff Pamela Mulholland, an easement holder, was assisting plaintiff Mary Mattern, an elderly easement holder, down the easement, she had to walk single file in front of Mary, while Mary held on to Pamela's shoulders, due to the narrow width. Individuals using the easement also have to wait to access the walkway if others are already traversing in the opposite direction due to the narrow width. Although defendant Joseph testified that he has seen the easement holders walk side-by-side and carry inner tubes down the path, this Court must defer to "the trial court's superior ability to judge the credibility of the witnesses who appeared before it," *Ambs v Kalamazoo Co Rd Comm'n*, 255 Mich App 637, 652; 662 NW2d 424 (2003), especially in the face of conflicting evidence, *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010) ("[I]f there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder."). See also MCR 2.613(C).

---

[5] At oral argument, defendants' counsel admitted that defendants erected the concrete breakwall without obtaining approval from the relevant regulatory agencies and without obtaining an opinion from an engineering expert regarding the necessity or efficacy of a breakwall for their intended purpose of preventing erosion of their lake frontage.

Likewise, the trial court did not clearly err in concluding that defendants installed the garden fence "solely to preclude or inhibit Plaintiffs' use," and that "[t]he fence was an attempt to make foot traffic impassible or at best, impracticable." Defendant Joseph repeatedly testified that he believed that the 41-inch pathway was an appropriate and sufficient width, commenting that he thought that he was "real liberal on what [he] did with that boundary."[6] He explained that he has seen the easement holders walk side-by-side and walk inner tubes down the path, and that he believes that the "easternmost side" of the easement under the 1991 order is 42 inches wide. However, as previously discussed, multiple witnesses provided testimony directly contrary to defendant Joseph's, and the trial court was in the best position "to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). See also *Dawe*, 289 Mich App at 401; *Ambs*, 255 Mich App at 652. Additionally, defendant Joseph's trial testimony plainly revealed defendants' uninhibited frustration with plaintiffs' use of Outlot A to access their dock and the beach area, which prompted defendants to limit plaintiffs' use as much as possible by taking numerous actions, including, *inter alia*, taking countless photographs of plaintiffs using the easement, installing four surveillance cameras, calling the police and posting no trespassing signs, and circulating a notice to the easement holders that stated, among other things, that defendants "will be enforcing our contract to the fullest extent," that "[d]ue to a few, everyone must suffer the consequences of their actions," and that they were "installing 24 hour surveillance cameras to make sure that you all abide by the contract." Notably, defendant Joseph also testified that he installed the garden fence the night before plaintiffs installed their dock in 2013, knowing that they would be installing the dock the following day. This deliberate action further reveals an intent to limit plaintiffs' use of the easement. From this testimony, and the trial court's opportunity to observe defendant Joseph's demeanor as he testified, the trial court did not clearly err in concluding that defendants intended to limit the pathway to such an extent that it was impracticable, impassable, or, at the very least, inconvenient for some or all of the easement holders. See MCR 2.613(C); *Dawe*, 289 Mich App at 401; *Ambs*, 255 Mich App at 652.

"The courts of this state have repeatedly held that 'equity may shape her relief according to the situation as it may present itself when the time for the decree arrives[.'] " *Greenspan v Rehberg*, 56 Mich App 310, 325; 224 NW2d 67 (1974), quoting *Thompson v Enz*, 385 Mich 103, 110; 188 NW2d 579 (1971). As mentioned *supra*, when the owner of a servient estate interferes with an easement, the owner of the easement may proceed by bringing an action for damages, injunctive relief, or both. See, e.g., *Choals*, 353 Mich at 73; *Hasselbring*, 263 Mich at 476; *Soergel*, 141 Mich App at 587-588, 590-591; *Bd of Comm'rs*, 93 Mich App at 781. Notably, "[i]f a grantee is not content with a way designated by his grantor, and an agreement cannot be reached, a court of equity has power to designate a convenient way . . . ." *Douglas v Jordan*, 232 Mich 283, 288; 205 NW 52 (1925).

Here, similar to *Greenspan*, given the intense and ceaseless conflict between the parties in this case, "[t]he trial court was faced with the situation in which the only feasible method of

---

[6] Defendant Joseph did not have any expertise in this regard. Therefore, we conclude that his opinion on the issue has no merit.

insuring that the originally expressed intent of the parties was fulfilled[] was by ordering the construction of" a walkway. *Greenspan*, 56 Mich App at 325. During the hearing on defendants' posttrial motions, the trial court specifically recognized defendants' right to designate a pathway for plaintiffs, but it found that "[i]t's just not able to be done by them [so that] the easement [is] practical or even possible the way it's been handled at this point, which is why the Court had to intervene and had to adjust what would otherwise have been a process they could've carried out, but they wouldn't, and the Court so determined." As the trial court concluded, it was clear from the evidence presented at trial that allowing the parties to determine the width of the walkway on their own in accordance with the 1959 easement agreements and 1991 stipulated order would not resolve the ongoing dispute between the parties regarding the path or walkway that plaintiffs may use in accordance with the easement. See *id*. As such, simply ordering plaintiffs to comply with the existing terms of the 1959 easement agreements and 1991 order "would be only a temporary and wholly unsatisfactory solution to the problem." See *id*. On this record, the trial court did not abuse its discretion in concluding that ordering plaintiffs to construct the walkway was proper in the interest of equity. See *id*.

However, we find that the trial court's order fails to resolve the incessant dispute between the parties with regard to the pathway, which has continued while this case has been on appeal. Given the seemingly never-ending conflict and animosity between the parties, the trial court's decision to prescribe only a minimum width for the constructed pathway leaves the issue subject to an expansive range of interpretations and thus is outside the range of principled outcomes. See *Epps*, 498 Mich at 528. Remand is necessary only for the trial court to determine an appropriate maximum width for the pathway under the circumstances of this case so that this issue can be put to rest, rather than subject to further litigation. See MCR 7.216(A)(7).

## V. GUESTS

Defendants also argue that the trial court "erred by ruling that guests of the easement holders have the right to utilize the easement." We disagree. Contrary to defendants' statement in their questions presented, the trial court did not explicitly rule on the guest issue, but, instead, found that this issue was addressed by the 1991 order and that further findings would be redundant. Nevertheless, we conclude that the trial court did not err in concluding that the 1991 order was dispositive on the issue of guests and implicitly rejecting defendants' claim that plaintiffs had violated the 1959 easement agreements and 1991 order by allowing guests to utilize the easement.

"The scope of an easement [should] encompass[] only those burdens on the servient estate that were contemplated by the parties at the time the easement was created." *Wiggins*, 291 Mich App at 551-552 (quotation marks and citations omitted). When easement rights are conveyed by grant, an easement can be altered if the parties mutually agree to the modification. See *Blackhawk Dev Corp*, 473 Mich at 46 ("Where the rights to an easement are conveyed by grant, neither party can alter the easement without the other party's consent."); *Douglas v Jordan*, 232 Mich 283, 287; 205 NW 52 (1925).

We agree with the parties and the trial court that the language of the 1959 easement agreements and the language of the 1991 stipulated order are unambiguous. See *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503-504; 741 NW2d 539 (2007) ("A contract is

-10-

ambiguous when two provisions irreconcilably conflict with each other, or when [a term] is equally susceptible to more than a single meaning."); *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996) (indicating that contract language is ambiguous when it is "unclear or susceptible to multiple meanings"). Thus, the plain language of the documents must be enforced as written. *Wiggins*, 291 Mich App at 551-552.

The 1959 easement agreements did not expressly discuss the issue of guests. Rather, as defendants repeatedly emphasize, the only language that could be construed as suggesting whether guests are permitted to use the easement pursuant to that document is the statement that the easement was "grant[ed] unto the grantees, . . . and to subsequent owners of [the specific lots] or occupiers of [the specific lots] as tenants in possession, only. . . . ."

As the trial court recognized, it is clear from the language of the 1991 order memorializing the *stipulated agreement between the parties* that the parties clarified—and, in the process, altered—their respective rights under the easement by adding specific terms and conditions that were not included in the original easement agreements. Most relevant to this issue, the order clarifies that "in 1959 easements were granted across . . . Outlot A . . . *for the benefit of lots* 1, 3, 5, 9, 11, 12 . . . . ." As such, based on the plain language of the stipulated agreement and order, the easements were granted for the benefit of particular lots, not particular individuals who fulfilled particular classifications of ownership or rights of possession. Additionally, the order also states, "**IT IS FURTHER ORDERED** that each individual easement holder shall provide all children *utilizing the easement through them* with such care and supervision as is appropriate for their age and maturity." (Emphasis added.) The emphasized language in this provision clearly assumes that individuals other than the easement holders themselves may use the easement "through" the easement holders, meaning they may use the easement "by means of," "by the agency of," or "because of" an easement holder, not in their own right. See *Merriam-Webster's Collegiate Dictionary* (11th edition) (defining "through"). There are no other provisions in the 1991 order that indicate the contrary, or that apply to this issue.

To counter this understanding of the 1991 order, defendants argue that "children can be owners or occupiers of benefited parcels." However, this mere possibility does not make less significant the specific language indicating that children may "utiliz[e] the property *through*" an individual easement holder. (Emphasis added.)

Accordingly, to the extent that defendants claim that the 1959 easement agreements specifically prohibited non-easement holders (*i.e.*, anyone who was not a grantee, subsequent owner, or occupier who specifically constituted a tenant in possession) from using the easements, it is clear that this limitation or understanding was altered by the language of the 1991 agreement. The 1991 order specifically states that only the provisions of the 1959 easement agreements that are "not inconsistent" with the 1991 order "shall remain in full force and effect." Defendants' position, based on the 1959 easement agreements, is irreconcilable with the language in the 1991 order, and the trial court correctly determined that the guest issue was addressed, albeit minimally, by the 1991 order.

In sum, even if we assume, arguendo, that the quoted language from the 1959 easement agreements underscored by defendants precludes guests from utilizing the easement, the plain

language of the 1991 stipulated order clearly contemplates that individuals other than the grantees, subsequent owners, or "occupiers . . . as tenants in possession" of the lots benefitted by the easement may use the property "through" the easement holders. Accordingly, even though neither the 1959 easement agreements nor the 1991 order *expressly* allow guests to use the easements, it is clear that the parties, in conjunction with the 1991 order, specifically envisioned use of the easement by individuals not named as easement holders. To the extent that the 1959 easement agreements contemplated otherwise, the 1991 stipulated order properly altered easement agreements, as the parties negotiated the settlement agreement and stipulated to the trial court's entry of the order memorializing the agreed-upon terms. See *Blackhawk Dev Corp*, 473 Mich at 46; *Douglas*, 232 Mich at 287.

Thus, the trial court did not clearly err in concluding that the 1991 order indicated whether guests are allowed to use the easement and implicitly finding that defendants are not entitled to relief based on their claim that plaintiffs violated the easement agreements and 1991 order by allowing guests to use the easement.

## VI. DIRECTION OF BOAT PARKING

Defendants next contend that the trial court erroneously concluded that plaintiffs could park their boats due east in order to comply with the 1991 order, and that it erroneously declined to modify the 1991 order. We disagree.

In relevant part, the 1991 order provides:

**IT IS FURTHER ORDERED** that easement holders shall moor their boats on the western side of their dock facing in an easterly direction with the first boat being moored at the northern most end of the western side of the dock with the remainder of the easement holders boats being placed in the same manner along the western side of the dock immediately to the south of the first boat.

As the trial court concluded, the 1991 order is unambiguous. "Easterly" is defined as "situated toward or belonging to the east." *Merriam-Webster's Collegiate Dictionary* (11 ed). As such, it is apparent that "easterly" necessarily encompasses "due east."[7] There is absolutely no indication in the definition of "easterly" that an object facing directly east would be excluded from the common meaning of "easterly." Defendants' claim attempts to draw a distinction where none exists and, therefore, has no merit.

Nonetheless, defendants highlight defendant Joseph's trial testimony indicating that he did not realize, when he entered into the agreement giving rise to the 1991 order, that plaintiffs would be authorized to park their boats due east so that their "boats would be sticking out across his lakeview." Rather, defendants contend that defendant Joseph believed that the boats would

---

[7] The caselaw cited in defendants' brief on appeal does not hold otherwise. See *Ortynski v Grand Trunk W R Co*, 307 Mich 61, 63; 11 NW2d 326 (1943); *Fors v La Freniere*, 284 Mich 5, 8; 278 NW 743 (1938).

be parked parallel to the dock, which defendants characterize as "in an easterly direction," like other boats on the lake. Defendants also note defendant Joseph's trial testimony that plaintiffs' mooring of the boats due east makes it difficult or impossible for defendants to utilize their own boat and dock. This Court should not consider this extrinsic evidence in interpreting the 1991 order memorializing the parties' stipulated agreement, which clarified the 1959 easement agreements. "Only where the language in the granting instrument is ambiguous may this Court examine evidence extrinsic to the document to determine the meaning within it," *Blackhawk Dev Corp*, 473 Mich at 42; see also *Little*, 468 Mich at 700, and, again, the parties as well as the trial court agree that the language is unambiguous. See also *Dyball v Lennox*, 260 Mich App 698, 703-704; 680 NW2d 522 (2004) (explaining that it is inappropriate for a trial court to consider "the circumstances existing at the time [an] easement was granted" if the language of the easement is unambiguous).

In the alternative, defendants argue that the trial court "should still have modified the parking arrangement, either to better conform to the term 'easterly' in the 1991 Order, and/or in order to keep the peace." For the reasons already discussed, the current parking arrangement is consistent with the word "easterly." As such, it would be nonsensical for the trial court to alter the parking arrangement in order to make the parking situation "better conform" to the 1991 order. Moreover, defendants have cited no authority that trial courts are required to modify easements "in order to keep the peace," and Michigan caselaw undermines defendants' claim. See *Little*, 468 Mich at 700 ("Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted."). The 1991 order is unambiguous, and the trial court was constrained to enforce it as written.

## VII. ADDITIONAL CLAIMS RAISED IN THE TRIAL COURT

Defendants argue that reversal or remand is required based on the trial court's failure to enter an injunction—or, at a minimum, make factual findings—regarding several of plaintiffs' alleged violations of the 1959 easement agreements and 1991 stipulated order that defendants raised in the trial court. We disagree.

### A. STANDARD OF REVIEW

In addition to the standard of review described *supra*, "[f]ollowing a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law." *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). See also MCR 2.613(C). Because the purpose of the requirement that a trial court must articulate its factual findings is to facilitate appellate review, *People v Johnson*, 208 Mich App 137, 141-142; 526 NW2d 617 (1994), this Court reviews the adequacy of the trial court's findings of fact and conclusions of law to determine whether the court was aware of the issues in the case, whether it correctly applied the law, and whether appellate review would be facilitated by requiring further explanation. *Triple E Produce Corp v Mastronardi Produce Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).

### B. ANALYSIS

"A trial court sitting without a jury must make specific findings of fact, state its conclusions of law separately, and direct entry of the appropriate judgment. MCR 2.517(A)(1)." *Triple E Produce Corp*, 209 Mich App at 176. "Findings of fact regarding matters contested at a bench trial are sufficient if they are "[b]rief, definite, and pertinent," and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation. *Id*. at 176-177, citing MCR 2.517(A)(2), and *People v Porter,* 169 Mich App 190, 194; 425 NW2d 514 (1988).

Given the context of this case and the findings and ruling delineated in the trial court's November 21, 2014 opinion and order, the trial court's factual findings were sufficient in this case, and remand is unnecessary. See *People v Rushlow,* 179 Mich App 172, 177; 445 NW2d 222 (1989) ("The sufficiency of factual findings cannot be judged on their face alone; the findings must be reviewed in the context of the specific legal and factual issues raised by the parties and the evidence."), aff'd 437 Mich 149 (1991). The trial court specifically recognized that "[b]oth sides seek injunctive relief based upon their facts, the law[] (Defendant raised the Funneling Ordinance), the original easement of 1959, and the 1991 Order." It then omitted any factual findings supporting injunctive relief in favor of defendants. Accordingly, given its express recognition of defendants' request for relief, it is clear that the trial court implicitly rejected defendants' claims by concluding that it was unnecessary to specifically enjoin any of plaintiffs' conduct.

Further, as defendants emphasize on appeal, all of plaintiffs' purported violations were expressly or implicitly addressed by the language of the 1959 easement agreements and the 1991 order, which established the scope of plaintiffs' rights under the easement. Moreover, it is apparent from the trial transcripts that nearly all of the violations raised in defendants' counter-petition and contested by defendants at trial concerned specific incidents that had ceased before the trial began and, in many cases, occurred years before the petitions at issue in this appeal were filed. Accordingly, when the trial court held, "[I]n all other respects, the Orders and Agreements between the Plaintiffs and Defendants remain in full force and effect," it implicitly—and properly—held that plaintiffs remain bound by the terms of the documents governing the parties' rights with regard to the easement and that plaintiffs must abide by the requirements of those documents in the future. See *Blackhawk Dev Corp*, 473 Mich at 41. As the trial court concluded, it would have been redundant to enter an injunction in addition to its holding that the easement agreements and the 1991 order otherwise remained in effect.

Accordingly, the trial court's factual findings and conclusions of law were sufficient in this case, as it is apparent from the language of the trial court's November 21, 2014 order that "the trial court was aware of the issues in the case and correctly applied the law," and that "appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp*, 209 Mich App at 176-177. And, for the same reasons previously discussed, the trial court did not abuse its discretion when it failed to separately enjoin each of alleged violations of the 1959 easement agreements and 1991 stipulated order raised by defendants below.

VIII. VIOLATION OF ZONING ORDINANCE

Lastly, defendants argue that the trial court erred when it failed to invalidate some or all of the 1991 order based on the anti-"funneling" provision of the Cambridge Township Zoning Ordinance. We disagree.

## A. STANDARD OF REVIEW

This Court reviews *de novo* the interpretation and application of ordinances, *City of Riverview v Sibley Limestone,* 270 Mich App 627, 630; 716 NW2d 615 (2006), the proper interpretation of a court order, see *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991); *Silberstein v Pro-Golf of Am, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008), and issues of law generally, see *Oakland Co Bd of C Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

## B. ANALYSIS

The Cambridge Township Zoning Ordinance prohibits "funneling," as defined in § 2.2.57 of the ordinance, unless certain restrictions are followed. Cambridge Township Zoning Ordinance, § 5.21. It appears that the plaintiffs' use of the easement constitutes "funneling" under the zoning ordinance, and that Outlot A does not comply with the restrictions under § 5.21. See Cambridge Township Zoning Ordinance, §§ 2.2.57, 5.21. However, the underlying use of Outlot A for "funnelling" did not change in conjunction with the 1991 order. Thus, the use of Outlot A for "funnelling" purposes constituted a valid nonconforming use after the anti-"funnelling" section was enacted in July 1989. See Cambridge Township Zoning Ordinance, § 5.7. See also MCL 125.3208(1); *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341-342; 810 NW2d 621 (2011).

Defendants' claim is solely based on purported "expansions" of plaintiffs' use of the easement under the 1991 order that violated of the nonconforming use provisions of the zoning ordinance, which prohibit the expansion of an existing nonconforming use. See Cambridge Township Zoning Ordinance, § 5.7 (including multiple references to the principle that nonconforming uses shall not be enlarged, expanded, or expanded). Thus, the crux of defendants' claim is that the trial court erred in failing to amend the 1991 order or enjoin any conduct pursuant to the 1991 order which constitutes an expansion of plaintiffs' rights under the 1959 easement agreements.

It appears that defendants would have standing to bring a claim seeking relief based on a violation of the zoning ordinance.[8] Likewise, Michigan courts have recognized that neighboring property owners may bring an equitable cause of action in order to enforce compliance with a zoning regulation.[9] However, consistent with plaintiffs' arguments on appeal that defendants are

---

[8] See *Bowie v Arder*, 441 Mich 23, 42-43; 490 NW2d 568 (1992); *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990).

[9] See, e.g., *Cook v Bandeen*, 356 Mich 328, 330-334; 96 NW2d 743 (1959); *Jones v De Vries*, 326 Mich 126, 128-135, 139; 40 NW2d 317 (1949); *Baura v Thomasma,* 321 Mich 139, 142-

not entitled to raise this claim given their previous agreement to the 1991 order, it is well established that this Court will not allow a party to benefit from a claim of error arising from conduct that the aggrieved party contributed to by plan or negligence. *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). It is apparent that defendants seek to benefit from full or partial reversal of the 1991 stipulated order, in which defendants fully participated and to which defendants unequivocally agreed. If the zoning ordinance was, in fact, violated by the 1991 stipulated order, defendants were active participants in that violation, and they should not benefit now from their prior unlawful actions. On this basis, the trial court did not err in declining to grant defendants' relief and failing to reverse any portion of the 1991 stipulated order.

Further, it also appears that defendants' claim is barred by the equitable doctrine of judicial estoppel, "which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citations omitted). See also *Opland v Kiesgan*, 234 Mich App 352, 362-365; 594 NW2d 505 (1999) (explaining the equitable doctrine of judicial estoppel in detail, including the "prior success" model adopted in Michigan).

Here, there is a danger of inconsistent rulings, given defendants' specific advancement of, and agreement to, the stipulated 1991 order in the previous proceeding involving the exact same easement, and many of the same issues, contested in the instant appeal. See *id*. at 365 (stating that the focus of the "prior success" model is "the danger of inconsistent rulings"). Likewise, given the fact that defendants stipulated to the earlier order, they are effectively attempting to invoke the authority of a later trial court to override a bargain that they made with an earlier court presiding over the same case. See *id*. ("The prior success rule limits the application of judicial estoppel to a situation where a party attempts to invoke the authority of a second tribunal to override a bargain made with a prior tribunal."). Additionally, given the trial court's entry of the stipulated order, it is clear that the trial court accepted the fact that defendants actually agreed to the terms of the 1991 order as true, and defendants' current position that the order is invalid is wholly inconsistent with their earlier position that the 1991 stipulated order was appropriate. See *id*. at 362 (stating that under the "prior success" model, "there must be some indication that the court in the earlier proceeding accepted that party's position as true"). See also *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012). Accordingly, we conclude that defendants are judicially estopped from claiming that the trial court's entry of all or part of the 1991 order was in error, such that the trial court did not err in declining to grant their requested relief.

Even if defendants were entitled to seek relief on this claim, we conclude that their claim lacks merit. Defendants argue that the 1991 order is wholly or partially unenforceable based on the rule that agreements that violate the law are void. "Contracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void." *Michelson v Voison*, 254 Mich App 691, 694; 658 NW2d 188 (2003). See also *Am Trust Co v Michigan Trust Co*, 263 Mich 337,

143, 146; 32 NW2d 369 (1948); *Indian Village Ass'n v Shreve*, 52 Mich App 35, 38; 216 NW2d 447 (1974).

340; 248 NW 829 (1933) ("The general rule of law is that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover.") (quotation marks and citation omitted).[10] Likewise, if a "statute precludes entering into an agreement providing exactly what the [disputed] clause states . . . the clause is void and unenforceable as a matter of law." *Mino v Clio School Dist*, 255 Mich App 60, 71; 661 NW2d 586 (2003).[11] Thus, the critical inquiry is whether an illegal provision is "central to the parties' agreement." See *Stokes v Millen Roofing Co*, 466 Mich 660, 666; 649 NW2d 371 (2002). There are exceptions to the rule that a contract is void if it is based on illegal conduct, including if the parties were ignorant of the illegal nature, if it is a matter of slight illegality, if it involves an unessential legal provision, or if the illegal portion can be severed from the rest of the contract. See *Kukla v Perry*, 361 Mich 311, 323; 105 NW2d 176 (1960).

As previously discussed, the underlying use of Outlot A for "funneling" did not change in conjunction with the 1991 order. As such, the underlying activity regulated by the 1991 order, which constituted the fundamental or "central" portion of the settlement agreement and stipulated order, was not illegal. See *Kukla*, 361 Mich at 323; *Michelson*, 254 Mich App at 694; *Mino*, 255 Mich App at 71; *Stokes*, 466 Mich at 666. Further, although, as the trial court recognized, the 1991 order altered the 1959 easement agreements "as to the walkway and to the maintenance of boats on Wampler's Lake" by establishing specific limitations or restrictions applicable to those activities and plaintiffs' overall use of the easement, there is no indication that these additional specifications increased the use or materially changed the location of the use. Therefore, contrary to defendants' characterization of the 1991 order, there is no indication in its plain language that the parties intended to expand the easement through the 1991 order. See *Wiggins*, 291 Mich App at 551-552 (explaining that easements are interpreted like contracts, and that the plain language of contracts and easements, if clear, must be enforced as written). Likewise, there is no indication in the language of the 1991 stipulated order that the parties created new rights under the order. Instead, all of the provisions in the order appear to specify particular restrictions or limitations on activities already performed by both parties. See *id*. As such, there is nothing dispositive in the 1991 stipulated order that the "funnelling" uses of the easement were expanded after the ordinance section prohibiting "funnelling" was enacted. Notably, defendants have failed to identify any specific language in the 1991 order that

---

[10] Settlement agreements are contracts, constituting "a compromise of a disputed claim," and they are "governed by the legal rules applicable to the construction and interpretation of other contracts." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). See also *MacInnes v MacInnes*, 260 Mich App 280, 289-290; 677 NW2d 889 (2004). Courts will enforce contracts, including settlement agreements, as written unless they violate law or public policy. See *Reicher*, 283 Mich App at 663; *Bloomfield Estates Improvement Ass'n Inc v City of Birmingham,* 479 Mich 206, 212; 737 NW2d 670 (2007).

[11] Ordinances have the same effect as statutes. *Gale v Bd of Sup'rs of Oakland Co*, 260 Mich 399, 404; 245 NW 363 (1932).

specifically expanded plaintiffs' rights and, instead, mention blanket categories of rights that were allegedly expanded without providing any citations to the order.

There is no basis for concluding that the 1991 order is invalid based on the Cambridge Township Zoning Ordinance. The trial court did not err in declining defendants' request for relief based on the "funnelling" ordinance.

## IX. CONCLUSION

Defendants have failed to establish that any of their claims warrant relief, except to the extent that they have demonstrated that remand is necessary for the trial court to establish a maximum width for the constructed pathway. Therefore, we affirm the trial court's opinions and orders, but remand this case for that limited purpose. The court shall have 60 days to supplement its opinion on remand and transmit a copy of its supplemental order to this Court. See MCR 7.216(A)(7). On remand, the trial court may make its finding regarding the maximum width of the pathway on the existing record, or it may take additional testimony if the court deems it necessary.

Affirmed, but remanded for further proceedings consistent with this opinion. We retain jurisdiction.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

# Court of Appeals, State of Michigan

## ORDER

Linda S. Manley v Sue Pikulski

Docket No. 327510

LC No. 89-004109-CH

Kathleen Jansen
Presiding Judge

William B. Murphy

Michael J. Riordan
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

The trial court shall have 60 days from the date of the Clerk's certification of this order to supplement its opinion on remand and transmit a copy of its supplemental order to this Court. See MCR 7.216(A)(7). The supplemental order shall be limited to establishing a maximum width for the constructed pathway. The trial court may make its finding on the existing record, or it may take additional testimony if the court deems it necessary.

We retain jurisdiction.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

DEC 0 6 2016

Date

Chief Clerk